# UNITED STATES *v.* AMERICAN TOBACCO COMPANY.

## APPEAL FROM THE COURT OF CLAIMS.

No. 742.  Submitted March 29, 1897. — Decided April 12, 1897.

The tobacco company purchased from an internal revenue officer of the United States revenue stamps to the amount of $4100.10, to be put upon its tobacco as manufactured.    April 2, 1893, its factory in New York and all the contents were destroyed by fire.  Among the contents were the stamps so purchased.   Of these, stamps to the value of $1356.63 had not been used, and stamps to the value of $2743.47 had been put upon packages of tobacco which were still in the factory, unsold.   The prop-

erty was insured. In settling with the insurers the latter paid the tobacco company the value of the destroyed stamps, and it was understood that the insurers were entitled to whatever might be received or recovered from the Government under the provisions of the statute amending the laws relating to internal revenue. Act of March 1, 1879, c. 125. The company under the provisions of that act applied to the Treasury Department for the return of the destroyed stamps. The rules of the department required the applicant for such repayment to make oath that he had not theretofore presented a claim for the refunding of the amount asked for, and that its amount or any part thereof had not been received by him. Instead thereof the company filed an oath that the amount had not been claimed of the Government, and that no portion of it had been received from the Government. The department having refused payment, the company thereupon brought this action in the Court of Claims. *Held,*

(1) That the action was properly brought in the name of the insured for the use of the insurers;

(2) That payment by the insurer to the company did not bar the right of the latter to recover from the United States;

(3) That by recovering from the United States the company would become the trustee of the insurers, who were its equitable assignees;

(4) That upon the facts found by the Court of Claims the action could be maintained, as the payment by the insurers constituted no bar;

(5) That there was a substantial compliance with the Treasury regulation concerning the oath when the oath was filed on the part of the company of the fact of the destruction, and that no claim for refunding had been presented to the Government, and no portion of the claim had been paid by it;

(6) That the company had an insurable interest in the stamps destroyed;

(7) That it was too late to set up for the first time in this court that the Government had the election to reimburse the claimant by giving stamps instead of by payment in cash.

THIS action was brought in the Court of Claims for the purpose of recovering the value of certain internal revenue stamps, alleged to have been destroyed by fire before they had been used. The action is founded upon the provisions of section 3426 of the United States Revised Statutes, as amended by chapter 125 of the laws of 1879, 20 Stat. 327, 349, the first paragraph of section 17 of which reads as follows:

"The Commissioner of Internal Revenue may, upon receipt of satisfactory evidence of the facts, make allowance for or redeem such of the stamps issued under the provisions of this title, or of any internal revenue act, as may have been

spoiled, destroyed or rendered useless or unfit for the purpose intended, or for which the owner may have no use, or which, through mistake, may have been improperly or unnecessarily used, or where the rates or duties represented thereby have been excessive in amount, paid in error, or in any manner wrongfully collected; and such allowance or redemption shall be made either by giving other stamps in lieu of the stamps so allowed for or redeemed, or by refunding the amount or value to the owner thereof, deducting therefrom, in case of repayment, the percentage, if any, allowed to the purchaser thereof; but no allowance or redemption shall be made in any case until the stamps so spoiled or rendered useless shall have been returned to the Commissioner of Internal Revenue, or until satisfactory proof has been made showing the reason why the same cannot be so returned: *Provided*, That nothing herein shall be held as authorizing redemption of, or allowance for, any of the stamps allowance for which is prohibited by the provisions of 'An act relative to the redemption of unused stamps,' approved July twelfth, 1876."

On the 27th of May, 1895, the American Tobacco Company filed its petition in the Court of Claims in its own name for the use of certain insurance companies named in the petition, to recover the value of the stamps destroyed by fire in its factory. The facts as to the loss and destruction of the stamps were set forth and judgment asked for the value thereof. The usual general denial of all the allegations of the petition was filed by the Attorney General on behalf of the United States, and the case went to trial, and after the evidence had been submitted. the court found the following facts: That the tobacco company was a manufacturer of tobacco, occupying a building in New York city, which was established solely as a manufactory, no sales of tobacco being made at the factory, the shipments therefrom being made in bulk after the tobacco had been stamped according to law. On the 2d of April, 1893, the factory and its entire contents were destroyed by fire. Among those contents were internal revenue stamps of the United States of the face value of $4100.10. These stamps had been purchased by the company from the

United States Collector of Internal Revenue for use in the factory. Some of the stamps were unattached to packages of tobacco, and had never been used, and they were of the face value of $1356.63; the balance of the stamps of the face value of $2743.47 had been attached to packages of tobacco which had not been sold or offered for sale or removed from the factory for sale. The tobacco company had purchased and paid for these stamps, which were totally destroyed, and there were no unsettled claims against the company on behalf of the United States.

The court also found the following facts:

"IV. On or about the 1st day of November, 1893, the claimant filed with the Treasury Department, under the rules and regulations of said department, a claim for the redemption of said stamps so destroyed, with proof of said loss, which claim was examined and certified as true and correct by the United States Internal Revenue Collector for said district, but without recommendation of payment, for the reason, stated by the collector, 'that the claimant had been paid by the insurance companies for the value of the stamps'; and on the 14th day of February, 1894, the department rendered its decision upon said application, declining to allow the same, for the reason 'that satisfactory evidence has been furnished to this office that you have received reimbursement of the value of said stamps by the recovery of insurance thereon.'

"V. Thereafter, on or about the 2d day of April, 1895, the claimant, by its attorneys, filed an amended petition for the redemption of said stamps, and asked for a rehearing; and on April 10, 1895, the Treasury Department rendered a decision declining to grant a rehearing, and this suit was brought.

"VI. The contents of said factory were insured to the American Tobacco Company, by the insurance companies for whose use this suit is brought, in the full sum of $139,500. The total loss by fire as adjusted and settled with said claimant was $78,635.47, which sum said companies have paid to the American Tobacco Company in proportions as the face of their several policies bears to the whole sum insured. The

face value of said United States internal revenue stamps destroyed as aforesaid, namely, $4100.10, was a part of the sum so paid by said insurance companies.

"VII. In the adjustment of the losses and the payment thereof it was understood between the claimant and the insurance companies that the insurance companies were entitled to have and should receive, in the proportions their several policies bore to the entire amount insured, the amount of the redemption money for the destroyed stamps to be recovered upon the application aforesaid or in this suit.

"VIII. This suit was brought by the claimant, for the use of said insurance companies in the proportions aforesaid, to recover the value of said stamps so destroyed.

"IX. By an existing regulation of the Commissioner of Internal Revenue, made June 12, 1873, by authority of the act of June 30, 1864, section 11, afterwards reënacted as Revised Statutes, section 3426, all claims arising under that section were required to be made upon a certain printed form, called 'Form 38,' and ever since some time in 1875, and probably earlier, all claimants under the said section have been required to make oath, upon Form 38, that they have 'not heretofore presented any claim for the refunding of the above-mentioned amount or any part thereof,' and 'that the value or reimbursement of the value of said stamps, or any portion thereof, has not heretofore been received by claimant, directly or indirectly.'

"X. In presenting the claim as stated in Finding IV, the claimant's general manager did not make the oath referred to in Finding IX in the form required by the Commissioner of Internal Revenue, but, instead of taking the required oath, he made oath that the claimant had 'not heretofore presented any claim *to the Government* for the refunding of the above-mentioned amount, or any part thereof,' and 'that the value or reimbursement of the value of said stamps, or any portion thereof, has not heretofore been received by claimant, directly or indirectly, *from the Government.*'"

As a conclusion of law the court found that claimant was entitled, for the use of the companies, to recover the sum of

$4100.10. Judgment pursuant to the finding of the court was entered, from which an appeal was taken to this court.

*Mr. Assistant Attorney General Dodge* and *Mr. Assistant Attorney Binney* for appellants.

*Mr. Charles W. Needham* and *Mr. John B. Cotton* for appellee.

MR. JUSTICE PECKHAM, after stating the facts, delivered the opinion of the court.

Three assignments of errors, alleged to have been made by the court below, have been filed on the part of the Government, as follows:

"1. In holding that the use appellees had an equitable claim against the appellant which could be enforced by a suit in the name of the nominal appellee.

"2. In holding that section 3426 of the Revised Statutes, as amended in 1879, required the Commissioner of Internal Revenue to refund the tax represented by the face value of destroyed tobacco-tax stamps, or to furnish others in their place, in cases where the full amount represented by such face value had been recovered by the tobacco manufacturer from insurance companies, so that he had been subjected to no loss.

"3. In entering judgment in favor of the appellee for the sum of $4100.10."

It is argued upon the part of the Government that as the insurance companies have paid the tobacco company in full for the value of the stamps destroyed by fire, they have thereby become the actual plaintiffs in this suit, and that the connection of the tobacco company is merely nominal; the case must, therefore, be decided as one between the United States and the insurance companies. Dealing with the companies in that light, it is further urged that their right to sue is based upon the ground that they are subrogated to the rights of the tobacco company, and consequently if there be no right of subrogation, there is no right of recovery; there

is no right of subrogation, because there was no insurable interest in the stamps on the part of the tobacco company; and there was no insurable interest because the tobacco company could obtain from the Government either other stamps in lieu of the stamps destroyed, or the amount or value thereof, upon giving satisfactory evidence of the necessary facts to the Commissioner of Internal Revenue, and therefore the tobacco company was not liable to suffer any loss, and as a consequence had no insurable interest in the stamps.

The argument, as we think, is not well founded. The case is not to be treated or decided as one between the United States and the insurance companies. On the contrary, the rights of the companies, as between them and the Government, are not the subject-matter of the suit. The insurance companies, as such, have no right of action against the Government. It is the right of the claimant, the tobacco company, which is to be passed upon, and unless that company has a legal cause of complaint no recovery can be had in this suit. The companies must recover in the name of the tobacco company and by reason of its rights. *Hall & Long* v. *Railroad Companies*, 13 Wall. 367, 372, and cases cited.

The suit is properly brought in the name of the insured for the use of the insurers, but the cause of action rests on the rights of the owner. Ibid.; *Phœnix Ins. Co.* v. *Erie & Western Transportation Co.*, 117 U. S. 312, 321, and cases cited.

Payment to the owner by the insurer does not bar the right against another party originally liable for the loss, but the owner, by recovering payment of the underwriters, becomes trustee for them, and by necessary implication makes an equitable assignment to them of *his* right to recover *in his name*. *Rockingham Mutual Fire Ins. Co.* v. *Bosher*, 39 Maine, 253, 255.

The question then arises as to what right, if any, the tobacco company has under the statute above cited, when it appears that the company has received payment from the insurance companies for the value of the stamps destroyed. Is that fact a bar to its right to claim payment under that section in a case where the recovery is sought for the purpose of reimbursing

the insurance companies for the payments made by them to the extent of the value of the stamps?

We think upon the facts found by the Court of Claims the action can be maintained, and the payments by the insurance companies constitutes no bar.

No question is made in regard to the sufficiency of the proof in regard to the destruction of the stamps by fire or of the *bona fides* of the tobacco company. The claim was examined and certified as true and.correct by the United States Collector of Internal Revenue for the district in which the factory was situated, but he failed to recommend payment of the claim, for the reason, as stated by him, " .that the claimant had been paid by the insurance companies for the value of the stamps "; and the department itself, when the claim was made, rendered its decision upon the application, declining to allow the same, for the reason " that satisfactory evidence has been furnished to this office that the claimant has received reimbursement of the value of the stamps by the recovery of insurance thereon."

It is true that the claimant was unable to comply with the regulations of the department in one particular regarding the oath to be made by such claimant. It could not truthfully be said that the claimant had not theretofore received directly or indirectly the value or reimbursement of the value of the stamps. This oath was required by what is called "Form 38," which was a certain printed form of oath to be taken by all claimants for reimbursement· for stamps claimed to· have been destroyed within the meaning of the section of the Revised Statutes heretofore quoted.

The claimant, however, through its proper officer, did make oath that it "had not heretofore presented any claim *to the Government* for the refunding of the above-mentioned amount, or any part thereof," and " that the value or reimbursement of the value of said stamps, or any portion· thereof, has not heretofore been received by claimant directly or indirectly *from the Government.*"

While the regulation prescribed by the Commissioner of Internal Revenue would be regarded as proper and appropriate for the purpose of satisfying him of the fact of the

destruction of the stamps, yet we think there was a substantial compliance with that regulation on the part of the tobacco company in this case, when it made oath through its proper officer to the fact of such destruction, and that it had not presented any claim for the refunding of the amount or any part thereof to the Government, nor had the value of said stamps, or any portion thereof, been theretofore received by the claimant, either directly or indirectly, from the Government.

The real object of the regulation, it must be assumed, was to prevent fraud upon or improper claims against the Government and to protect it from itself twice paying for the loss. If the object of the regulation were to discover whether the stamps had been insured and whether payment therefor had been made by the insurance company, and if so, to base a refusal to reimburse upon that fact, we think that portion of the regulation was unreasonable, and compliance with the form as provided was unnecessary.

The purpose of the statute was to have the Government reimburse the person who had bought and paid for internal revenue stamps which had been destroyed under the circumstances mentioned in the statute, before they had been used. To make such reimbursement would be no loss to the Government, while to retain the amount paid would be highly inequitable. The Government recognized this fact by the passage of the statute in question. The company did not purchase the stamps in payment of any tax then due from it to the Government; they were purchased as a matter of convenience and to be thereafter affixed to packages of tobacco which were to be sold in the future. The tax was laid upon sales of tobacco and the stamps were resorted to as a convenient means of collecting the tax on such sales. Of course, if no sales of packages of tobacco took place upon which the stamps might be affixed, no tax had become due to the Government, and therefore if after the purchase of the stamps they were destroyed by fire, the purpose of their purchase was frustrated and the Government was not entitled, upon any equitable ground, to retain the money paid for the stamps.

In *Jones* v. *Van Benthuysen*, 103 U. S. 87, 88, Mr. Justice Miller said, speaking for the court:

"Undoubtedly this statute, 15 Stat. 125, 152, only intended to impose a tax upon the sales of tobacco, and if the dealer was also the owner of stamps to be used in paying the duties on tobacco, he could sell them separately in any quantity, without being liable to a tax for such sales. When unattached to the tobacco they do not enter into its value, and they can be bought and sold at their face value as an independent commodity, to be used when and wherever the purchasers choose to do so. For such sales no tax is imposed upon the seller or the buyer.

"On the other hand, we are of opinion that when they are once attached to the tobacco and cancelled, and can never be lawfully used again, they cease to have any separate and independent value, and that which they had previously has become merged into that of the tobacco. All subsequent sales are made upon the basis of the increased value the tobacco has acquired by the payment of the stamp duty, and can never be estimated apart from this.

"It would seem to follow from this that if the stamps for which the plaintiff was charged by the collector were not affixed to the tobacco at the time he made the sale, no tax should be charged to him for that value. On the other hand, if the stamps were affixed at the time of the sale, they then entered into the value of the tobacco purchased, and the broker who made the sale should be taxed on the price of the tobacco as it was sold."

Where the stamps have been destroyed under the circumstances detailed in this case, and those who paid for them apply to the Government to be reimbursed for their value, what materiality is there in the fact that the applicant has been paid the value of such stamps by an insurance company under and by virtue of a separate contract made with that company on the part of the claimant upon good consideration? That circumstance does not alter the fact that the Government has been paid for the stamps which were to be used for a certain purpose — the payment of taxes thereafter to become due the

Government — and that by reason of the destruction of the stamps by fire they cannot be used for the purpose for which they were intended. Whatever sales of tobacco might be thereafter effected by the tobacco company would have to be evidenced by the attaching of other stamps upon the packages sold. Unless, therefore, the Government repaid the value of these stamps so destroyed, or provided other stamps in lieu thereof without any further payment, the Government would be in the position of one who retained money to which it had no equitable right. It would be no answer to that fact to show that some other person had reimbursed the claimant the amount it had paid for the stamps. That would not alter the position of the Government. We cannot think that the payment to the claimant by the insurance companies absolved the Government in the slightest degree from the duty, under that statute, of paying back the money which it had received and for which it had delivered stamps that had been destroyed by fire before the contemplated use of them had been made. Whether or not the insurance companies could have made a successful defence (to the extent of the value of the stamps in question) to an action on their policies by the assured, because of an alleged lack of insurable interest in the stamps by the assured, is beside the question. They were not bound to make such defence. Having received the premiums they had the right to fulfil their contract, and the tobacco company after such payment might still ask the Government to pay to it the value of the stamps in order that it might thereafter repay the insurance companies. The Government loses nothing by payment in such case. It simply repays money which it has no equitable right to retain. The technical question of insur-able interest does not arise in this case, which involves simply the construction of the statute cited and the right of the claimant to recover. As was said in *Mason* v. *Sainsbury*, 3 Dougl. 61, 64, by Mansfield, Lord Chief Justice, in reference to a defence of payment by the insurance companies: " The case is clear: the act puts the Hundred, for civil purposes, in the place of the trespassers; and upon principles of policy, as in the case of other remedies against the Hundred, I am satisfied

that it is to be considered as if the insurers had not paid a farthing." This was a case against the Hundred, upon a statute making it liable for damages to property caused by a mob. Although the insurance company had paid the damages, the action in the name of the owner of the property was sustained exactly the same as if there had been no payment by the insurers. The liability of the Hundred, under the statute, was not thereby in the least affected. This case under the statute cited is still stronger because the Government suffers no actual loss by the repayment, while it would secure an unjust and inequitable profit by its refusal to pay.

We are also of opinion that the tobacco company had an insurable interest in the stamps. It owned them absolutely, having purchased and paid for them. The right of reimbursement under the conditions named in the statute did not affect that insurable interest, nor prevent the possibility of loss or prejudice arising from the destruction of the stamps. Because an owner of property may be able to reimburse himself in case of its destruction, from other sources, is no reason for denying to such owner an insurable interest in the property. An owner has an insurable interest in his property to the extent of the value of the building on it, notwithstanding the existence of a mortgage on the property sufficient to absorb it. Per Bradley, J., in *Insurance Co.* v. *Stinson*, 103 U. S. 25, 29; May on Insurance, §§ 81, 82. The amount of interest or its character is not material in determining the question whether a party who attempts to recover under a policy has an insurable interest. (Ibid.)

Upon all the facts, we think the objections above alluded to are untenable.

Another objection raised by the Government is that, under the section of the statute cited, the Commissioner of Internal Revenue had the choice, in making an allowance or redemption, either to give other stamps in lieu of the stamps so allowed for or redeemed, or to refund in money the amount or value to the owner of the stamps, and that as he had such election when he was applied to by the owner, an action thereafter commenced to recover the face value of the stamps in

money deprived him of that election, and hence could not be maintained.

The statute does give to the Commissioner of Internal Revenue the choice as to how reimbursement for the loss of stamps should be made; whether by delivering other stamps or by payment of the face value thereof in money. When the claim in this case was filed with the Treasury Department, the Commissioner had then the choice, upon being satisfied of the necessary facts, to reimburse the claimant in either way he thought proper, either in stamps or in money. That was the time when his election could properly have been made. Instead thereof he refused absolutely to do either, and gave as his reason that the claimant had already been paid for the stamps by the recovery of the insurance thereon. If that were a sufficient reason in law, the Commissioner was justified in his refusal. As it was not a sufficient reason, the Commissioner was not justified, however sincerely he believed that he was. The claimant was, therefore, by reason of this refusal, compelled to resort to the courts in order to obtain its legal rights under the statute. Having filed its claim in the Court of Claims and asked for judgment for the money value of the stamps, and a trial upon the merits as to the liability of the Government to respond at all having been had in the court below, and so far as appears from the record no question of this kind having been therein made, it is too late, upon argument in this court, for the Government for the first time to question the form of the remedy, whether it should be a demand for money only or one which left the election still with the Commissioner to reimburse claimant by giving stamps instead of payment in cash. The objection does not go to the merits of the claim, but is one of procedure only; hence, even if it would have been valid if taken in time, it may be and was waived by the failure of the Government, so far as the record shows, to take the objection until the argument of the case in this court.

We find no error in the record authorizing a reversal of the judgment of the Court of Claims, and it is, therefore,

*Affirmed.*