NASSAU BREWING CO. v. MOORE, Collector. INDIA WHARF BREWING CO. v. SAME. OCHS v. SAME. JOSEPH FALLERT BREWING CO., Limited, v. SAME.

(Circuit Court, E. D. New York. October 6, 1899.)

INTERNAL REVENUE—STAMPS FOR FERMENTED LIQUORS—EFFECT OF CHANGE IN STATUTE.

The tariff act of 1897 (30 Stat. 206), which repealed the provision of Rev. St. § 3341, that the commissioner of internal revenue should allow upon all sales of internal revenue stamps to any brewer, and by him used in his business, a deduction of 7½ per cent., did not affect the tax-paying value of stamps purchased before it went into effect, and upon which the deduction was allowed, but not used until after it went into effect.

These were suits by brewing companies against the collector of internal revenue to recover certain alleged overpayments of taxes required on fermented liquors.

Louis Marshall, for certain plaintiffs.

William C. Wells, Edward V. Slauson, and Frederick W. Rowe, for certain plaintiffs.

George H. Pettit, for the United States.

THOMAS, District Judge. The able and thorough discussion by the United States attorney clearly and forcibly presents the defendant's contention, but the court is unable to consent to the conclusion drawn from a generally accurate exposition of the system of taxation provided by the statute. The question involved is this: Section 3341, Rev. St. U. S., provides that "the commissioner of internal revenue shall allow upon all sales of such stamps [for the tax on fermented liquors] to any brewer, and by him used in his business, a deduction of seven and one-half per centum." The internal revenue collector, pursuant to the uniform practice, sold stamps to the plaintiffs, who were brewers, and upon such sales, and at the times thereof, allowed a deduction of 7½ per cent. These stamps, although purchased before for use, were not actually used in payment of taxes until after the Dingley act took effect, which act omitted and thereby repealed the previous statutory direction for the allowance of the deduction above stated. May the United States require such purchaser upon using such stamp to pay the 7½ per cent. deducted from the purchase price of the stamps upon the sale thereof? In considering this question it must be kept in mind that the purchase of the stamp is not a payment of the tax, but that the stamp is a convenient means of collecting the tax on beer "sold or removed for consumption or sale." U. S. v. American Tobacco Co., 166 U. S. 468, 17 Sup. Ct. 619. What did the former law say to the plaintiff? It gave this command: "Buy at a deduction of seven and one-half per centum a stamp of the denomination of one dollar, place it on a barrel of beer, and the tax thereon shall be paid thereby." The plaintiff paid the money as demanded, received the stamp, and placed it on the barrel. Now the claim is that the Dingley law, by retroactive influence, vitiated all previous sales of stamps at a deduction of 7½ per cent., so that stamps theretofore bought could not be received thereafter in full payment

of the tax; that is, a stamp bought before the act, and used thereafter, lost 7½ per cent. of its tax-paying power, in consequence whereof the government levied an additional tax of 7½ per cent. on the product. The Dingley act does not permit stamps to be sold, after its passage, at less than their nominal value. It does not deal with stamps theretofore sold. It does not change the tax in terms levied by the law. Of course, the result of the act is to increase the tax on beer by 7½ per cent., because, although the tax still remained at one dollar per barrel, stamps to pay the tax could no longer be bought at a discount. But the previous statute provided for a discount on the sale of stamps, and did not reduce the tax. This may be illustrated by the provision which allows a deduction on the sale of documentary stamps, while the tax on the document is unaffected thereby. This follows the rule that the purchase of the stamp is not a payment of the tax. The stamp is but a means for the future payment of the tax. A stamp sold before the Dingley act has the same tax-paying power that it had before, and when the stamp is placed on the barrel it pays the tax to the full limit of its face value. All this is clear. But the government claim amounts to this: The stamp had not been paid for, into 7½ per cent.; i. e. the collector was not permitted by the statute to allow the deduction until the stamp was used, and when the stamp was used there was no law allowing any deduction. This view makes both the sale and use of the stamp conditions precedent to be performed by the brewer before he obtains any right to a reduction. This construction is at least partially incorrect, and sufficiently so to defeat the government's conclusions founded upon it. At the outstart it may be noticed, as a matter of some, but inconclusive, weight, that the government has uniformly allowed the deduction "upon sales" at the time of sales. Indeed, it is understood that the statute or government recognizes or provides neither machinery nor regulations for allowing a rebate upon sums paid for stamps after the due use of the same. But the terms of the statute preclude the interpretation claimed by the government. The statute directs a deduction upon all sales of stamps used by a brewer in his business. The deduction is upon the sales of stamps; hence the first condition is the sale of the stamps, and, of course, such condition is precedent. But upon what stamps is it allowed? Stamps used in his business. This use must follow the sales, and therefore relates to something that must be done with the stamp after the sale. This, by all authority, involves a condition subsequent. Hence the allowable construction most favorable to the defendant is this: The title to the stamp, with an accompanying right to the deduction, vests in the purchaser at the time of sale, and the right to a reduction is defeasible, unless the stamp thereafter be used in his business. The Dingley act does not defeat this right, but, on the other hand, expressly provides (section 34) that "the repeal of existing laws, or modifications thereof, embraced in this act, shall not affect any act done, or any right accruing or accrued, * * *; but all rights and liabilities under said laws shall continue and may be enforced in the same manner," etc. Not an act done, not an accruing right, shall be affected. Accepting the defend-

ant's interpretation, can it be said that no right was accruing to these plaintiffs by reason of their purchase of the stamps; had no act been done by them from which a deduction must accrue under the mandate of the law? No; where a right is defeasible on a condition subsequent, it is deemed to have accrued. Such is common learning. And does not the Dingley act, by the most exact language, carefully protect these accruing or accrued rights? It is considered that, even under the doubtful construction of section 3341 adopted by the government, the plaintiffs had at least incipient rights, which congress protected in the enactment of the new statute. And so it should. When the government of the United States, following the practice observed by it for many years, sold at a deduction of 7½ per centum a stamp of the denomination of one dollar, and assured the purchaser that the stamp was worth a whole dollar for the purpose of paying taxes, such stamp should have a tax-paying power equal to the highest obligation issued by the government; and if, after such sale, the purchaser used the stamp in his business, he should be deemed to have fulfilled every obligation resting upon him, and to have perfected the right initiated by his purchase. The plaintiffs should have judgment in their several actions.