Whaley, Judge,
delivered the opinion of the court:
This is a demurrer filed by defendant to dismiss on the ground that the Court of Claims lacks jurisdiction in these cases.
The S.S. City of Brunswick was owned and operated by the TJnit&g, States and was employed solely as a merchant vessel. The vessel after loading cargo at New Orleans and Mobile, sailed from Mobile on August 13, 1921, bound for Antwerp, Belgium, and on August 25, 1921, the Gity of Brunswick grounded near the entrance of Halifax Harbor, resulting in a total loss of the vessel and her cargo.
In each of the eighteen cases under consideration the petitions set forth and the undisputed facts introduced by way of stipulation show that the plaintiffs were owners of the merchandise lost and owners and holders of the bills of lading covering the merchandise, and that in each case the plaintiffs have brought suit in this court at the request of and for the benefit of various underwriters who have paid the plaintiffs or their agents the moneys representing the losses sustained.
The defendant urges that the Supreme Court by its decisions such as in Johnson v. Fleet Corporation, 280 U.S. 320, and Matson Navigation Co. v. United States, 284 U.S. 352, has declared that this court is without jurisdiction to hear and to determine claims against the United States upon causes of action arising out of the ownership, possession, and operation of merchant vessels by the Government, *372 and that the Supreme Court has declared such- remedy exclusive under the suits in admiralty act.
The provisions of section 2 of the admiralty act of March 9,1920, 41 Stat. 525, are as follows:
“ That in cases where if such vessel were privately owned or operated, or if such cargo were privately owned and possessed, a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought agavnst the United States' or against such corporation, as the case many be, provided that such vessel is employed as a merchant vessel or is a tugboat operated by such corporation. Such, suits shall be brought in the district court of the United States for the district in which the parties so suing, or any of them, reside or have their principal place of business-in the United States, or in which the vessel or cargo charged with liability is found. The libelant shall forthwith serve-a copy of his libel on the United States attorney for such, district and mail copy thereof by registered mail to the-Attorney General of the United States, and shall file a sworn return of such service and mailing. Such servicíPlnd mailing shall constitute valid service on the United States and such corporation. In case the United States or such corporation shall file a libel in rem or in pérsonam in any district, a cross-libel in personam may be filed or a set-off claimed against the United States or such corporation with: the same force and effect as if the libel had been filed by a private party. Upon application of either party the cause-may, in the discretion of the court, be transferred to any other district court of the United States.” [Italics ours.]
In the present instance any suit filed under the admiralty act would necessarily be one “ in personam ” and not in rem, as the vessel and cargo were lost.
Section 2, as indicated above, clearly states that a libel. in personam may be brought against the United States “ provided that such vessel is employed as a merchant vessel and defines the manner of bringing such suits in the districts in which plaintiffs reside or have a principal place-of business or. where the vessel or cargo is found.
It therefore becomes necessary to consider the residence or-place of business of the various plaintiffs, and the cases-are accordingly divided into three groups, as follows:
*373 GROUP 1
Samuel Sanday & Co., C-712.
John F. Meyer & Sons Milling Co., F-71.
The commissioner has found in his report in the Sanday ■case that the plaintiffs are copartners having a place of ^business in London, England, and are citizens of the United Kins ''om of Great Britain, but that the said Samuel Sanday .& Com ->any both prior and subsequent to the filing of the • original petition in this case, June 7, 1923, had a place of business in New York City, and used in their correspondence a letterhead upon which the name of Samuel Sanday and Company appears.
In the case of John F. Meyer & Sons Milling Company the petition sets forth that plaintiffs were “ a corporation •organized under the laws of the State of Missouri, with office and principal place of business in the city of St. Louis, :State of Missouri.” It has also been stipulated in this case that “ claimant has the legal status of citizenship as alleged in the petition.”
In both of the above cases it therefore appears that plaintiffs have a place of business in the United States, and suit ■should therefore have been brought in the district courts under the admiralty act in the district wherein plaintiffs reside or have their place of business.
The demurrer as to these two cases is sustained and they are dismissed.
GROUP 2
A. de Brouchere, C-1007.
Magasins Eug. Schmidt & Co., C-1008.
L. Brabandt & Co., C-1021.
C. Jussiant & Co., C-1325.
In all of the cases in this group the cargo was insured by Lloyd’s of London, England, which is an unincorporated ■organization having their principal place of business in London, and neither in 1921 nor at any time thereafter •did the underwriter at Lloyd’s have a place of business in •the United States. Such facts are based on the stipulation *374 filed in these cases. Also in each of the fonr cases plaintiffs were citizens and residents of Belgium carrying on business in a foreign country and did not have an office, agency, or place of business in the United States.
GROUP 8
L. Brabandt & Co., C-1006.
Du Pasquier & Co., C-1009.
C. Jussiant & Co., C-1010.
Heirs of Emile Gesnot, C-1020.
Am. Vermeulen, C-1022.
Henri Deweert, C-1023.
Devriendt Freres, C-1024.
Gaston B. Schul, C-1025.
Carl Sensing, C-1026.
Van Nuland Freres, C-1066.
M."& J. Caron Freres, D-19.
Carel Frederick Marie Stahl, E-559.
The remaining cases forming this group are those in which the plaintiffs are foreigners, having no place of business in the United States, with underwriters in each instance having a principal place of business in the United States.
The Government urges that the underwriters therefore could have brought an action upon the subrogation rights under the admiralty act.
In United States v. American Tobacco Co., 166 U.S. 468, 474, it was stated as follows:
“ The case is not to be treated or decided as one between the United States and the insurance companies. On the contrary, the rights of the companies, as between them and the Government, are not the subject matter of the suit. The insurance companies, as such, have no right of action against the Government. It is the right of the claimant, the tobacco company, which is to be passed upon, and unless that company has a legal cause of complaint no recovery can be had in this suit. The companies must recover in the name of the tobacco company and by reason of its rights. Hall & Long v. Railroad Companies, 13 Wall. 367, 372, and cases cited. (Italics ours.)
*375 _ “ Payment to the owner by the insurer does not bar the right against another party originally liable for the loss, but the owner, by recovering payment of the underwriters, becomes trustee 'for them, and by necessary implication makes an equitable assignment to them of his right to recover in his name. Rockingham Mutual Fire Ins. Co. v. Bosher, 39 Maine 253, 255.”
Also in Phoenix Ins. Co. v. Erie Transp. Co., 117 U.S. 290, 312, it was stated as follows:
“ From the very nature of the contract of insurance as a contract of indemnity, the insurer, when he has paid to the assured the amount of the indemnity agreed on between them, is entitled, by way of salvage, to the benefit of anything that may be received, either from the remnants of the goods, or from damages paid by third persons for the same loss. But the insurer stands in no relation of contract or of privity with such persons. His title arises out of the contract of insurance, and is derived from the assured alone, and can only be enforced in the right of the latter. In a court of common law it can only be asserted in his name, and, even in a court of equity or of admiralty, it can only be asserted in his right. In any form of remedy, the insurer can take nothing by subrogation but the rights of the assured.” (Citing cases.) “ That the right of the assured to recover damages against a third person is not incident to the property in the thing insured, but only a personal right of the assured, is clearly shown by the fact that the insurer acquires a beneficial interest in that right of action, in proportion to the sum paid by him, not only in the case of a total loss, but likewise in the case of a partial loss, and when no interest in the property is abandoned or accrues to him.
“ The right of action against another person, the equitable interest in which passes to the insurer, being only that which the assured has, it follows that if the assured has no such right of action, none passes to the insurer; and that if the assured’s right of action is limited or restricted by lawful contract between him and the person sought to be made responsible for the loss, a suit by the insurer, in the right of the assured, is subject to like limitations or restrictions.”
In view of the doctrine announced by the Supreme Court, supra, plaintiffs in this last group of cases are the proper parties to bring the suit and should be contemplated as the real plaintiffs rather than the insurance companies. For this reason the cases listed under groups 2 and 3 may be *376 consolidated into a single group typified by a situation in which a nonresident alien or foreign corporation, not having any place of business in this country, owns goods shipped on a steamship owned and operated by the United States and employed solely as a merchant vessel, which vessel was lost at sea.
The sole question before us for determination is, therefore, whether the presentation of claims by.a nonresident alien, and arising out of the operation of a Government-owned vessel as a merchant vessel, finds jurisdiction in the Court of Claims.
A case closely analogous to the present one was that of the Venezuelan Meat Export Co. v. United States, decided February 5, 1923, and reported in 58 C.Cls. 76. In that case the petition alleged that the plaintiff was a corporation under the British Government; that the United States was the owner of the S.S. Balosaro when the bill of lading was issued and when the petition was filed; that the vessel was being operated as a merchant vessel and as a commerce carrier for hire. It was also alleged that in March, 1919, at a port of Venezuela, the plaintiff shipped certain wet salted hides, its property, on the S.S. Balosaro to be transported to Havre, France, and received bills of lading therefor signed by G. Johnson, master of said steamship, and that in and by the bills of lading the master acknowledged receipt of the hides in apparent good order and condition, to be carried to Havre and there delivered, in like good order and condition, to a designated corporation, alleged to have been the plaintiff’s sales agent.
Suit was brought on the alleged grounds that the merchandise was not delivered in the same good order and condition as when shipped, but had been damaged through the fault and negligence of the S.S. Balosaro, its owners, agents and servants.
This court, after discussing the origin of the suits-in-admiralty act, approved March 9, 1920, held in substance that Congress by the suits-in-admiralty act had provided an exclusive remedy in suits in personam, in the district courts of the United States for the presentation of claims arising out of the operation of Government-owned vessels *377 in the merchant marine and such claims could not be considered by the Court of Claims.
In Johnson v. U.S. Shipping Board Emergency Fleet Corporation, supra, decided January 6, 1980, the Supreme Court stated with respect to the suits-in-admiralty act that—
“ Prior to the passage of the act, merchant vessels of the United States were subject to seizure. * * * And the Fleet Corporation was liable to be sued in State or Federal; courts on causes of action arising out of the operation of such.ships. * * * The act relieved the United States of the inconvenience resulting from such seizures and gave remedy by libel in personam against the United States and! such corporations. * * * But that is not its only purpose.. It authorizes libel in personam where there is nothing oni which recovery in rem could be had. * * * And it furnishes the exclusive remedy in admiralty/ against the United-States and such corporations on maritime causes of action arising out of the possession and operation of merchant vessels.” [Italics ours.]
In the recent Matson Navigation Company case, supra, decided January 4, 1932, on a writ of certiorari to the Court of Claims, the Supreme Court clearly and concisely states-as follows:
“ As the suit is against the United States upon a maritime-cause of action growing out of the operation of ships for-the Government, the Court of Claims is without jurisdiction if the vessels in question were opevcuted as- merchant vessels, and as the petition does not allege that they were-otherwise operated, it fails to state- a cause of action within the jurisdiction of the Court of Claims.” [Italics ours.]
A lack of jurisdiction by the- Court of Claims in all maritime causes involving a vessel owned and operated by the United States as a merchant vessel seems to be clearly and unequivocally etablished by the Venezuelan Meat Export Company case and the Supreme Court’s decisions in the Johnson v. Fleet Corporation and Matson Navigation Company cases, from which we have quoted.
The court’s attention has been directed by plaintiffs to Angfartygsaktiebolaget Tirfing v. United States, 70 C.Cls.. 251, decided June 2, 1930. It need only be stated that the-basic principle involved in this case is different from the-cases at bar, in that the vessel concerned was not owned,. *378 operated, or controlled by the United States and sailed from one foreign port to another foreign port. These facts clearly distinguish it from the instant cases which concern the operation of a Government-owned vessel, owned and operated by the United States and employed as a merchant vessel sailing from ports of the United States.
For reasons stated, the sixteen cases forming the consolidated groups 2 and 3, all of which involve the operation of a Government-owned vessel as a merchant vessel, should be dismissed.
It is, therefore, held that the demurrer of defendant, for lack of jurisdiction, is sustained as to all of the eighteen cases, and they are accordingly dismissed.
It is so ordered.