**STEPHANO BROS. TO USE OF GREAT AMERICAN INS. CO. et al. v. UNITED STATES.**

No. 48743.

United States Court of Claims.

April 3, 1950.

Jaquelin A. Marshall and Hugh H. Obear, Washington, D. C., for plaintiff. Sands, Marks & Sands, Richmond, Va., and Douglas, Obear & Campbell, Washington, D. C., were on the brief.

Joseph H. Sheppard, Washington, D. C., with whom was Assistant Attorney General Theron L. Caudle, for defendant.

Before JONES, Chief Judge, and MADDEN, HOWELL, WHITAKER and LITTLETON, Judges.

MADDEN, Judge.

The plaintiff, a manufacturer of cigarettes, on January 17, 1946, removed from its factory at Philadelphia for consumption or sale 1,060 cases of Marvel brand cigarettes. It had affixed to the packages of cigarettes the appropriate federal internal revenue stamps for which stamps it had paid $37,100. The cigarettes were

delivered to the Baltimore and Ohio Railroad Company consigned to the plaintiff at St. Louis. On January 18 the freight car containing the cigarettes was derailed and burned, and all the cigarettes were destroyed except four cases. The stamps affixed to the packages in the four cases not destroyed had cost the plaintiff $140.56. The railroad paid the plaintiff the amount of its loss in cigarettes and stamps, and two insurance companies reimbursed the railroad. This suit is for the use and benefit of the insurance companies. Their status as beneficiaries is not contested by the Government, and is approved by the decision in United States v. American Tobacco Company, 166 U.S. 468, 17 S.Ct. 619, 41 L.Ed. 1081.

The stamps on the packages which were not destroyed were redeemed by the Government and the plaintiff was paid $140.56, which it paid over to the railroad. The plaintiff's further claim for the redemption of the stamps which had been affixed to the burned packages and had, of course, been burned with them, was rejected by the Commissioner of Internal Revenue by a letter which said that neither Section 2198 of the Internal Revenue Code, 26 U.S.C.A. § 2198, nor Article 116 (b) of Treasury Regulations No. 8 authorized the reimbursement sought by the plaintiff.

We shall recount some of the history of the pertinent statutes and regulations.

The Act of May 12, 1900, C. 393, 31 Stat. 177, 26 U.S.C.A. § 3304, which we quote in a footnote,[1] provided that the Commissioner of Internal Revenue might, subject to regulations prescribed by the Secretary of the Treasury, redeem internal revenue stamps which had been "spoiled, destroyed, or rendered useless or unfit for the purpose intended" and under certain other circumstances, but not unless the stamps were returned "or until satisfactory proof has been made showing the reason why the same can not be returned." This statute applied only to stamps which had not been affixed to packages of tobacco, or were affixed to packages which had not been removed from the factory. Contrast United States v. American Tobacco Co., supra, with American West Indies Trading Co. v. United States, 45 Ct.Cl. 488, 492, 493. The tax seems to be a tax upon manufacture, payable upon removal from the factory, or upon sale, with or without removal. Liggett and Myers Tobacco Co. v. United States, 299 U.S. 383, 57 S.Ct. 239, 81 L.Ed. 294; R. J. Reynolds Tobacco Co. v. Robertson, 4 Cir., 94 F.2d 167.

If, then, stamped packages of tobacco had been removed from the factory, though they were still owned by the manufacturer, and they were spoiled in appearance or contaminated in content the manufacturer under the Act of May 12, 1900, lost not only the value of the tobacco but the

1. "*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Commissioner of Internal Revenue, subject to regulations prescribed by the Secretary of the Treasury, may, upon receipt of satisfactory evidence of the facts, make allowance for or redeem such of the stamps, issued under authority of law, to denote the payment of any internal-revenue tax, as may have been spoiled, destroyed, or rendered useless or unfit for the purpose intended, or for which the owner may have no use, or which through mistake may have been improperly or unnecessarily used, or where the rates or duties represented thereby have been excessive in amount, paid in error, or in any manner wrongfully collected. Such allowance or redemption may be made, either by giving other stamps in lieu of the stamps so allowed for or redeemed, or by refunding the amount or value to the owner thereof, deducting therefrom, in case of repayment, the percentage, if any, allowed to the purchaser thereof; but no allowance or redemption shall be made in any case until the stamps so spoiled or rendered useless shall have been returned to the Commissioner of Internal Revenue, or until satisfactory proof has been made showing the reason why the same can not be returned; or, if so required by the said Commissioner, when the person presenting the same can not satisfactorily trace the history of said stamps from their issuance to the presentation of his claim as aforesaid: * * *"

stamps which, in the case of cigarettes, were worth more than the tobacco. Manufacturers found a way out by exporting the spoiled or contaminated tobacco and thus obtaining a refund of the value of the Internal Revenue stamps under 26 U.S.C.A. § 2136. But the exporting of such tobacco products for that purpose tended to give American tobacco a bad reputation abroad. For that reason legislation was proposed which would permit the American manufacturer to get back his stamp money directly from the Treasury upon withdrawing the tobacco from the market.

The Act of March 3, 1931, c. 441, 46 Stat. 1510, 26 U.S.C.A. § 2198 was enacted. It reads as follows: "Internal-revenue stamps affixed to packages of tobacco, snuff, cigars, or cigarettes which, after removal from factory or customhouse for consumption or sale, the manufacturer or importer withdraws from the market, may, under regulations prescribed by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury, be redeemed if issued after December 31, 1931, and if claim for their redemption is presented by the manufacturer or importer within three years after the year of issue as indicated by the number or symbol printed thereon by the Government, irrespective of the date of their purchase. Stamps of any issue shall not be sold until those of the previous year's issue have been disposed of or later than one year after the year of issue."

Our problem is to determine the meaning of the word "withdraws" in the statutory language "which * * * the manufacturer * * * withdraws from the market." The legislative history shows that the withdrawal might be a rather fully voluntary act of the manufacturer, as where his products had become stale, or where he desired to use a more attractive package, or abandon a brand name. See H.Rep.No.1995, 71st Cong., 2nd Sess., pp. 1–2. Or the withdrawal might be one as to which the manufacturer had no real choice. For example, the cigarettes might, in shipment or storage, have become contaminated with a poisonous or inflammable substance which would make their use impossible. Yet they would come within the clear language of the cited committee report, which refers to "damaged, stale or unmerchantable" products, and would be "withdrawn" from the market, within the meaning of the statute, although the manufacturer had no choice whatever as to whether he would or would not market them.

It seems, then, that the withdrawal contemplated by the statute is not necessarily a withdrawal decided upon by a manufacturer who has a choice as to whether he will or will not let the products go into the market. In the instant case more than ninety-nine percent of the shipment of cigarettes was reduced to ashes, and, while we are not advised as to the condition of the remaining less than one percent, we suppose that it was hardly marketable. Yet, on whatever remains there were, stamps of the value of $140.56 were found and redeemed by the Government pursuant to the statute. The requirement contended for by the Government, then, is that, to be redeemable, there must be some identifiable remains of the cigarettes, not necessarily usable remains, or perhaps some remains of the stamps. In the instant case, there were identifiable remains of both tobacco and stamps. They were put into the car, the car burned, and it is agreed that the remaining ashes were those of the cigarettes and stamps.

The Government's contention that there must be stamps which can be handled and examined, in order to be redeemable under the provisions of the Act of March 3, 1931, 26 U.S.C.A. § 2198, would draw a sharp distinction between that act and the act of May 12, 1900, 26 U.S.C.A. § 3304 (a) (b). That earlier act expressly provides, as we have seen, for the redemption of stamps destroyed before they have been attached to packages of tobacco, or, if attached, before the tobacco has been removed from the factory. Congress had no policy, therefore, of refusing redemption of stamps made useless just because they left no remains which could be handled and hence had to be accounted for by circumstantial evidence. And the text of the

1931 Act expresses no such change of policy. As we have seen, it speaks merely of withdrawal from the market. Congressman Thatcher, the sponsor of the 1931 Act said on the floor of the House of Representatives that the bill "amends and broadens existing law providing for the redemption of tax stamps * * *", apparently meaning that it broadened it by making it still applicable after the stamped packages of tobacco had been removed from the factory. 74 Cong.Rec. pp. 2583–4. In describing the bill's application he spoke of cases where the products "have been entirely destroyed and are of no use so far as their consumable quality is concerned."

The Government relies heavily upon Article 116 (b) of Treasury Regulations 8 (1934 Ed.). The 1931 Act provides that stamps "may, under regulations prescribed by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury, be redeemed * * *." Article 116 (b) is the applicable regulation, and it provides only for the redemption of stamps removed from the packages under the supervision of a deputy collector of internal revenue, or destroyed, along with the packages, under the supervision of such an officer. The Government says that the regulation has the force of law, and invalidates the plaintiff's claim. We think not. We think that the delegation by Congress to the Treasury Department in the statute here in question gave the Department no authority to narrow the coverage of the statute, but only to provide procedures for the application of the statute to prevent the Government's being overreached, and claimants from being unreasonably denied relief. We think, therefore, that the fact that the regulations provide no relief procedure for claimants under some circumstances covered by the statute, does not have the effect of amending the statute.

In our consideration of Treasury Regulations 8, we note that Article 116 (a) which immediately precedes the one just discussed, and is applicable to the redemption of stamps under the Act of May 12, 1900, is not consistent with that statute, though that statute, like the 1931 Act, expressly provided that refunds might be made, "subject to regulations prescribed by the Secretary of the Treasury." The Act of May 12, 1900, as we have seen, expressly covers destroyed stamps. Regulation 116 (a) provides that stamps, *inter alia,* "destroyed" may be "presented" by the owner for redemption. It contains not a word as to how one might proceed if he could not "present" the stamps because they were non-existent. Yet this regulation seems not to have had the effect of partially nullifying the Act of May 12, 1900. See United States v. American Tobacco Company, 166 U.S. 468, 17 S.Ct. 619, 41 L.Ed. 1081.

The plaintiff is entitled to recover $36,959.44. It is so ordered.

JONES, Chief Judge, and HOWELL, WHITAKER and LITTLETON, Judges, concur.