SOUTHWESTERN GRAPHITE CO. et al.
v. FIDELITY & GUARANTY
INS. CORP.

No. 13814.

United States Court of Appeals
Fifth Circuit.

Feb. 13, 1953.

Rehearing Denied April 4, 1953.

William A. Brown, Ralph W. Yarborough and Louis Scott Wilkerson, Austin, Tex., B. H. Fly, Dallas, Tex., for Reconstruction Finance Corp.

David Bland and Austin Y. Bryan, Jr., Houston, Tex., for appellee.

Before HOLMES, RUSSELL, and STRUM, Circuit Judges.

HOLMES, Circuit Judge.

The appellants instituted this action on a five-year insurance policy, dated April 14, 1942, for losses by fire to real and personal property at Southwestern Graphite Company's plant in Texas. The fire occurred on February 13, 1947. The appellants sued on the policy in its original form and, in the alternative, on the policy as modified orally and in writing by the insurer acting through its agent, John L. Garner, Jr. The basic issue raised on this appeal is whether said policy was in force on the date of the fire and, if so, whether it covered the loss. The policy was of a special type required by the Defense Plant Corporation.

As originally issued, the policy covered the property, real and personal, of the Defense Plant Corporation. On May 31, 1946, the Reconstruction Finance Corporation (which by an act of Congress succeeded to all of the properties owned by said Defense Plant Corporation) sold all of the equipment and machinery, covered by the policy, to the Southwestern Graphite Company. The R. F. C. then lent the Graphite Company $42,500 (later reduced to $40,000) to pay the purchase money, and took a chattel mortgage on the personal property, and a deed of trust on the real property, to secure said loan. Thereupon, Graphite applied to Garner as the agent of the appellee to modify the policy so as to substitute it as the insured and to reduce the amount of the insurance to $40,000. On behalf of the insurer, Garner agreed to do this and told Graphite that the changes would be made and that it was covered by the endorsements to be put on the policy, all of which was subsequently agreed to by R. F. C.

Garner assured both R. F. C. and Graphite that the necessary endorsements would be made. Garner communicated with Ross, the General Agent of the company, and requested that the amount of coverage be reduced, but did not advise him that there had been a change of interests. On March 24, 1947, Garner wrote Ross, the General Agent, and gave notice of the fire. On the same date, Ross forwarded to Garner a copy of the endorsement reducing the amount of coverage, with a letter confirming the endorsement. This letter apparently crossed in the mails Garner's letter giving notice of the fire. On May 13, 1947, eighty-nine days after the fire and twenty-nine days after the expiration of the policy, appellee attempted retroactively to cancel the policy as of June 1, 1946, and offered to refund the premiums, which appellants refused to accept.

The first point for decision is upon the issue as to whether Garner was the agent of the appellee; and, if not, whether the latter is estopped to deny that Garner was its agent. The trial court sustained appellee's motion for an instructed verdict on the issue of Garner's agency, and submitted to the jury only the issue as to the amount of damages. After the return of the verdict, the court overruled appellants' motion for judgment on the verdict; and, on motion of the appellee, rendered judgment for the defendant notwithstanding the verdict.

The trial court held as a matter of law that Garner was Graphite's agent, which may have been a question for the jury, but we do not decide that point. If he was not the insurer's agent, there may have been an issue for the jury as to whether the appellee held him out as its agent, permitted him to act for it and in its name, and ratified his acts and conduct, so far as the parties interested in this insurance were concerned. In other words, there may have been an issue for the jury as to whether the appellee was estopped to deny that Garner was its agent in this transaction. Pacific Mutual Life v. Barton, 5 Cir., 50 F.2d 362, certiorari denied 284 U.S. 647, 52 S.Ct. 29, 76 L.Ed. 550.

Equity regards that as done which ought to be done; but we prefer to put our decision solely on the next ground of reversal urged by appellants, which is dis-

positive of this case. It is that they are entitled to judgment, so far as R. F. C. is concerned, even if the policy was not modified as requested, because of the express provision in the policy that coverage extended to after-acquired property and permitted the very change of interest here in question. This form of policy was one especially designed to meet the needs of Defense Plant Corporation, the predecessor in interest of R. F. C. The use of this form in Texas was authorized by a special state statute and a special order of the State Board of Insurance Commissioners. Art. 4918b, Sec. 2, V.A.C.S., V.A.T.S. Insurance Code, arts. 5.69 to 5.71. The language of the policy was clear and unambiguous. It covered all real and personal property of every description owned by the insureds or *in which they had an interest*, then existing or thereafter acquired, comprising and/or pertaining to and used in connection with the plant of Graphite, lessee, eleven miles northwest of Burnet, Texas. Then, to make assurance doubly sure, the policy contained a non-invalidation clause, something not always found in contracts of fire insurance, as follows:

"Non Invalidation. This Policy shall not be invalidated:

"(1) If any portion of the ground is not owned by the assured in fee simple;

"(2) If *sales,* bond issues, mortgages, *chattel mortgages, trust deeds,* or foreclosure proceedings have been negotiated or initiated, nor *until complete transfer of insurable interest* has been made;

"(3) If the interest of the insured be other than unconditional or sole ownership;

"(4) By failure of the insured to comply with any of the warranties or conditions contained in this policy." (Emphasis added.)

■ At the time of the fire, which is what counts, no endorsement was necessary to substitute R. F. C. for D. P. C. as an assured under the policy; the law made that change; R. F. C. had an insurable interest as mortgagee. There was never an instant, from the date of the policy until the time of the fire, that R. F. C. or its predecessor did not have an insurable interest in the property. Graphite, as lessee and mortgagor, also had successive insurable interests in the property. As lessee, it would have received a benefit from any proceeds of insurance by the application thereof to the restoration of the property leased, which it had an option to buy under the provisions of the lease. As mortgagor, it would have profited by having the proceeds applied to the payment of its debt. The policy provided for payment of the proceeds to D. P. C. and, by operation of law, to R. F. C. or its appointed representative. R. F. C. is entitled to recover the full amount of the verdict, which is less than its indebtedness and less than the face of the policy.

■ No decision has been found or cited that construes the form of policy upon which this suit is based. The appellee contends that the contract of insurance terminated with the termination of the lease. We find no such provision in the policy. Under the non-invalidation clause, this policy was to continue in force until complete transfer of insured's insurable interest had become an actuality. A lessor that sells property retaining a lien for the purchase money does not lose his insurable interest therein; neither does a lessee that buys it. The lessor and lessee, mortgagor and mortgagee, have independent insurable interests. Neither the lessor nor mortgagee may cancel the lessee's or mortgagor's insurance contract without the latter's consent. The policy in suit was in full force for a five-year period at the expense of Graphite, and neither D. P. C., R. F. C., Graphite, nor appellee, attempted to cancel it before the fire.

■ The policy referred to the assured as "they," which meant Defense Plant Corporation and Graphite; the interests of both were covered by the policy. The appellee's effort to cancel the policy was after the fire and after the expiration of its five-year term. R. F. C. requested Graphite to cancel it, but Graphite never did so. It sought a modification thereof. If not modified, the policy stands as written; and, as prayed for by appellants in the alternative judgment

should be rendered here for the Reconstruction Finance Corporation without prejudice to the rights and equities of Graphite. Hooper v. Robinson, 98 U.S. 528, 537, 538, 25 L.Ed. 219; Insurance Company v. Stinson, 103 U.S. 25, 29, 26 L.Ed. 473; United States v. American Tobacco Co., 166 U.S. 468, 479, 17 S.Ct. 619, 41 L.Ed. 1081; Commercial Union Assurance Co. v. Jass, 5 Cir., 36 F.2d 9, 10; Globe & Rutgers Fire Ins. Co. v. Rose, 8 Cir., 91 F.2d 635, 637; Smith v. Royal Ins. Co., 9 Cir., 93 F.2d 143, 145, certiorari denied, 303 U.S. 656, 58 S.Ct. 759, 82 L.Ed. 1115; Williamsburgh City Fire Ins. Co. v. Weeks Drug Store, Tex.Civ. App., 133 S.W. 1097; Superior Fire Ins. Co. v. C. S. Lee Grain & Elevator Co., Tex. Civ.App., 261 S.W. 212; Canfield v. Newman, Tex.Civ.App., 265 S.W. 1052; Universal Automobile Ins. Co. v. Morris Finance Corp., Tex.Civ.App., 16 S.W.2d 360; 24 Tex.Jur., Insurance, Sec. 89, p. 790; 44 C.J.S., Insurance, § 189, p. 889.

While the briefs and pleadings speak of R. F. C. as lending Graphite the money to buy the leased property, this strictly speaking is not correct. R. F. C. as successor of D. P. C. was the lessor and vendor. Graphite, the purchaser, as lessee was already in possession of the property with an option to buy it; it was also the equitable beneficiary of a fire insurance policy, with a premium of $3758.89 paid by Graphite. In addition to whatever vendor's or purchase money liens were affixed to the property by law, the R. F. C. took a deed of trust on the real property and a chattel mortgage on the personal property to secure the indebtedness to it arising out of the sale. In the circumstances, it was impossible for the insurable interests of the parties to cease or even become suspended while "they" were exchanging their several interests between themselves. The fee simple title to the property, in the aggregate, was in Graphite and R. F. C. They were the only actors in the transaction, whether we call it a sale or exchange; they were the only contemplated beneficiaries of the insurance; and, in a deal between themselves, there was no place for the title to go except from one to the other. From the moment that the lease was made, they were the repositories of the entire insurable interests in the property. While the interest of each may have changed in value or character, or shifted in part from one to the other, the possessor of the property remained the same, and the entire insurable interest of neither party ceased to exist. The requirements for invalidating the policy have not been met, because there has never been a complete transfer of the insurable interest of either beneficiary.

We find it unnecessary to discuss the other specifications of error, and think that judgment for the total amount of the verdict, with interest and costs, should be rendered here for the Reconstruction Finance Corporation, without prejudice to Graphite as aforesaid. We suggest that the judgment be prepared by counsel for appellants and, after the same has been submitted to appellee's attorneys for approval as to form, sent to the clerk.

Reversed and rendered.