valuation of the good will of the companies earning more than 10 per cent as determined by the Commissioner of Internal Revenue.

Furthermore, Mr. Hossack, of the American Appraisal Company, on whose testimony plaintiff chiefly relies, assumed increased earnings in the future, based upon the trend in past years. On the contrary, the valuation of the Commissioner of Internal Revenue is based on actual experience, and not on supposition of what may happen in the future. "The lamp of experience," we think, sheds the best light to guide our feet.

We are of opinion that the determination of the Commissioner of Internal Revenue is correct under the circumstances.

■ The other issue concerns the valuation of the land and buildings.

The Trial Commissioner finds that the Commissioner of Internal Revenue was not justified in reducing the valuation of the land and buildings placed on them by plaintiff. Defendant takes no exception to this finding. We have, therefore, adopted it. The valuations were those of the American Appraisal Company and the Ford, Bacon & Davis Company, reputable, nationally-known and recognized appraisal companies. These reductions must be restored. Plaintiff is entitled to have its excess profits credit computed on this basis.

But, the defendant asserts that the amendments of April 3, 1950 and April 14, 1950 first asserted an undervaluation of land and buildings, and that they cannot be considered as an amendment of the original claim for refund, which was based alone upon an undervaluation of good will, and, hence, it says, that plaintiff is entitled to recover only those tax payments which were made within two years of the filing of these amended claims for refund.

We are of opinion that the so-called amended claims for refund were not in fact amendments of the original claim, but injected new issues and that, therefore, the defendant is correct in saying that only those payments made two years

prior to the filing of these amended claims can be recovered in this litigation, or so much thereof as exceeds the amounts which would have been due if the valuation of the land and buildings had not been reduced by the Commissioner of Internal Revenue. Judgment will be entered accordingly. The amount of the recovery will be determined pursuant to Rule 38(c), 28 U.S.C.A. If the parties desire to file a stipulation showing the amount due, computed in accordance with this opinion, they may have thirty days in which to do so.

It is so ordered.

JONES, Chief Judge, and LARAMORE and MADDEN, Judges, concur.

LITTLETON, Judge, dissents.

PHILIP MORRIS & CO., Ltd., Incorporated to the use of ÆTNA INSURANCE COMPANY
v.
The UNITED STATES.

P. LORILLARD COMPANY, Incorporated to the use of ÆTNA INSURANCE COMPANY
v.
The UNITED STATES.

Nos. 683–53, 684–53.

United States Court of Claims.
March 6, 1957.

See also, D.C., 120 F.Supp. 765.

J. A. Marshall, Washington, D. C., for the plaintiffs, Hugh H. Obear, Washington, D. C., and Sands, Marks & Sands, Richmond, Va., Douglas, Obear & Campbell, Washington, D. C., were on the briefs.

Benjamin H. Pester, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant, James P. Garland, Washington, D. C., was on the briefs.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiffs sue to recover the price which they paid to the Government for revenue stamps which they affixed to packages of cigarettes, cigars, and smoking tobacco, which tobacco products and stamps were destroyed by fire while being transported by truck to customers of the plaintiffs. We have held in prior cases that the Act of March 3, 1931, c. 441, 46 Stat. 1510, Sec. 2198 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 2198 is applicable to such situations and authorizes the redemption of stamps so destroyed. Philip Morris & Co., Ltd., Incorporated, etc. v. United States, 100 F.Supp. 820, 120 Ct.Cl. 703; Stephano Brothers, etc. v. United States, 89 F. Supp. 693, 116 Ct.Cl. 503.

The Government urges that the instant plaintiffs cannot recover because they did not own the tobacco products and stamps at the time of their destruction. Under the applicable statute, only the manufacturer or importer of tobacco products has the right to redeem stamps. If then, the ownership has passed to a purchaser from the manufacturer, the redemption statute would not seem to apply. Also, if the plaintiffs were not

the owners of the destroyed articles, they would not have a property interest on which to base their suit.

The plaintiffs shipped the goods by truck, freight prepaid, to their customers. That would indicate that title would not pass until the carriage was completed and the goods were delivered to the customers. But in billing the purchasers, the freight charge was added as a separate item. Since the purchaser was to pay the freight, that would indicate that the goods were to be his during carriage. And the invoices stated that transportation was to be at the purchaser's risk, which would be a strong indication that the goods belonged to the purchaser while they were at his risk. While this was the way the contract was worded, it did not express the real agreement of the parties. When the goods were destroyed by fire, the plaintiffs immediately replaced the goods, and cancelled the charges for the destroyed goods. They did this without waiting for reimbursement by the carrier. They thus showed by their actions that the goods were at their risk during transportation, and that is, of course, strong evidence of their ownership. The Government, not a party to the contract of sale, is not in a position to contradict the interpretation which the parties, by their actions, put upon their contract, even though that interpretation is not consistent with the words of their contract. We conclude that the plaintiffs were the owners of the destroyed goods.

The Government says that the plaintiffs "sold" the destroyed goods to the trucking company, after they had been destroyed by fire, and were paid in full by the trucking company, so that they have been compensated for the tobacco and the stamps. They have been so compensated, but not as a result of a sale. Invoices of the goods were sent to the trucking company by plaintiffs but only as evidence of what goods they had shipped, and of their value. The carrier, as an insurer of the goods against all risks except certain ones not here relevant, paid the plaintiffs the value of the goods. The carrier was, in turn, insured by the Aetna Insurance Company, which paid it the same amounts which it had paid the plaintiffs.

We consider first the effect which the carrier's payments to the plaintiffs may have had upon the plaintiffs' rights to redemption of the stamps. If one sues a wrongdoer who has damaged him or his property, the wrongdoer cannot defeat his suit by showing that he has been paid by an insurance company which had insured him against such risks. And unless the insurance company had contracted for a right of subrogation to his claim against the wrongdoer, he may keep both the insurance money and the damages recovered from the wrongdoer.

The Government is, of course, not in the position of a wrongdoer in these cases. But if the plaintiffs had the statutory right, as we have held in prior cases that they had, to redeem the destroyed stamps, we think the Government cannot deny that right on the ground that other arrangements which the plaintiffs may have had with another person required that other person to pay the plaintiffs the value of the stamps, in the circumstances in which they were destroyed. See United States v. American Tobacco Company, 166 U.S. 468, 17 S.Ct. 619, 41 L.Ed. 1081.

The plaintiffs sue here to the use of Aetna Insurance Company. There was no contract of insurance or of subrogation between the plaintiffs and Aetna Insurance Company, and hence there is no basis for making that company the beneficiary of our judgments.

In Philip Morris & Co., Ltd., etc. v. United States, 120 F.Supp. 765, 128 Ct. Cl. 153, the petition alleged that the insurance company, to whose use the plaintiff was suing, paid the plaintiff for the destroyed tobacco products and stamps. That may have indicated a third party beneficiary relation between the insurance company and the plaintiff, although the insurance policy there, as here, was issued to the transportation company. In the instant case, our findings show

that the insurance company paid the transportation company. The latter company indorsed the checks over to the plaintiffs, but that was only its way of paying its obligation to the plaintiffs, and did not indicate any contractual relation between the insurance company and the plaintiff.

The court, in Philip Morris last cited supra entered judgment, as requested, to the use of the insurance company. On the facts of the instant case, we think no basis exists for doing that. We will, therefore, enter judgments for the plaintiffs. What they may feel legally or morally bound to do with the money when they get it is not our concern.

The plaintiffs in Nos. 683–53 and 684–53 may have judgments in the amounts of $5,864.26 and $330, respectively, each with interest as provided by law.

It is so ordered.

JONES, Chief Judge, and WHITAKER and LITTLETON, Judges, concur.

LARAMORE, Judge (dissenting).

I respectfully dissent for the following reasons: Plaintiff sues for the benefit of the Aetna Insurance Company, the insurer of the Overnite Transportation Company. I do not believe plaintiff can maintain this suit because there is no privity of interest or contractual relationship between the plaintiff and the insurer. The only subrogation is between the insurance company and the carrier.

The Aetna's liability to the carrier was merely to pay the carrier for the liability which the carrier incurred to the shipper or consignee on account of the loss of the goods. Having paid the carrier, the insurance company became subrogated to the right of action the carrier might have had against any one whose negligence cause or contributed to the loss. No action of the Government or plaintiff caused or contributed to the loss of the goods, and the insurance company could not by right of subrogation maintain a suit against the United States.

The insurer is dependent for the maintenance of this suit upon the rights of the assured. Plaintiff in this case was not the assured and cannot maintain this suit. Phoenix Insurance Company v. Erie and Western Transportation Company, 117 U.S. 312, 6 S.Ct. 750, 29 L.Ed. 873.

The liability of the Aetna Insurance Company was only to the Overnite Transportation Company, and merely because the Overnite Transportation Company endorsed the Aetna check over to the plaintiff would not create a contract between plaintiff and Aetna such as to give rise to this suit.

The tobacco products were delivered to the Overnite Transportation Company upon a bill of lading under which the plaintiff shipper retained no right in the products. Therefore, I believe plaintiff cannot maintain this suit either for itself or for the benefit of the insurer.

Furthermore, the majority opinion gives judgment to the plaintiff to do with what it may. Plaintiff is not out one cent by reason of the loss, and I can think of no reason why it should receive this "windfall."

I would dismiss the petition.

Janis ZALCMANIS, Gertrude Jansons, Lorena Jansons, Asja Vivna Jansons, n/k/a Asja Liders and the Public Administrator of the County of New York, State of New York, Administrator of the Estate of Karlis Jansons, Deceased,

v.

The UNITED STATES.

No. 250–56.

United States Court of Claims.
March 6, 1957.