**GRACE et al., to Use of GRANGERS MUT.
INS. CO. v. UNITED STATES.
Civil Action No. 3262.**

District Court, D. Maryland.
March 5, 1948.

Stanley R. Bossard, of Baltimore, Md., for plaintiffs.

Bernard J. Flynn, U. S. Atty., and James B. Murphy, Asst. U. S. Atty., both of Baltimore, Md., for defendant.

CHESNUT, District Judge.

In this case the plaintiffs sue the United States for damage to their automobile truck caused by the alleged negligence of an employee of the defendant. The suit is based on the recently enacted Federal Tort Claims Act, §§ 921–946.

The facts of the case are set out in a stipulation from which I find that the damage to the plaintiffs' truck occurred on July 24, 1946, and resulted from a collision on a Maryland highway with a motor vehicle (a Jeep) owned by the United States and operated by its employee acting within the scope of his employment. The collision was caused by the latter's negligent operation of the Jeep which was the proximate cause of the damage. The monetary damage was $780.00. The plaintiffs carried automobile collision insurance in the Grangers Mutual Insurance Company under which that Company has paid to the plaintiffs $680.00, that is the amount of the loss less $100.00 deductible. In accordance with the policy provisions this payment was made under a subrogation agreement. The suit is brought in the name of the plaintiffs, who are owners of the truck, "to their own use and to the use of the Grangers Mutual Insurance Company".

The Assistant United States Attorney representing the defendant has made no serious contest as to the liability of the United States to the plaintiffs to the extent of the $100.00; but does contest earnestly liability for the balance of the monetary damage to the plaintiffs' truck, on the ground that it has been paid by the insurer. The legal contention is that the Federal Tort Claims Act waives the sovereign immunity of the Government to suits only by persons who have been injured with respect to themselves or their property and does not authorize suits against the Government by plaintiffs based on derivative causes of action as for instance by assignment or subrogation; and therefore suits by or for the benefit of subrogees are not permissible. This is the substantial question involved in the particular case.

The Act contains a section with regard to procedure, Title 28, U.S.C.A. § 932. That section makes applicable the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Rule 17(a) provides—"Every action shall be prosecuted in the name of the real party in interest;" This suit is in accordance with that Rule. The parties in interest are obviously the plaintiffs to the extent of $100.00 for their own account and to the extent of $680.00 for the use or benefit of the insurer. The legal effect of the notation in the titling of the case "to the use of" is that any recovery of damages by the plaintiffs will be held in trust by them for the benefit of the insurer to the extent of its interest. United States v. American Tobacco Co., 166 U.S. 468, 474, 17 S.Ct. 619, 41 L.Ed. 1081. This is also in accordance with the long and well established practice in Maryland. Md. Code 1939, Art. 75, § 3; Poe's Pleading and Practice Vol. II, Ch. 13, pp. 150-155. See also McWhirter v. Otis Elevator Co., D.C. S.C., 40 F.Supp. 11.

In support of the contention that the Government is not liable to the plaintiffs for any amount that has been reimbursed to them by the insurer reference is made to the well-known "Assignment of Claims Statute," Section 203, Title 31, U.S.C.A. It is argued that the "subrogation agreement" mentioned in the stipulation constitutes such an assignment of claim as is prohibited by the Statute. But this Statute is in my opinion clearly inapplicable to the present situation. The purpose of the Statute is to protect the United States against defenses which it has to claims by an assignor by way of set-off, counter claim, etc., which might not be applicable to an assignee. Such defenses are expressly reserved under the Tort Claims Act, Title 28 U.S.C.A. § 932. It has often been held that the Assignment Statute applies only to voluntary assignments and not to

those arising by operation of law as, for instance, by the equitable doctrine of subrogation. Nat. Bank of Comm. v. Downie, 218 U.S. 345, 356, 31 S.Ct. 89, 54 L.Ed. 1065, 20 Ann.Cas. 1116; Martin v. National Surety Co., 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822; McKenzie v. Irving Trust Co., 323 U.S., 365, 65 S.Ct. 405, 89 L.Ed. 305. The interest of the insurer comes from the equitable doctrine of subrogation which arises from the nature of the subject matter and the relationship of insured and insurer, quite apart from and independent of an express assignment from insured to insurer. This doctrine has been a well-known principle of insurance law from the time of Lord Mansfield. Mason v. Sainsbury, 3 Dougl. 61, 64; United States v. American Tobacco Co., supra, 166 U.S. page 478, 17 S.Ct. page 623; Chicago, St. L. & N. O. R. Co. v. Pullman Southern Car Co., 139 U.S. 79, 87, 11 S.Ct. 490, 35 L.Ed. 97; Phoenix Ins. Co. v. Erie & Western Transp. Co., 117 U.S. 312, 321, 6 S.Ct. 750, 29 L.Ed. 873.

It is apparently the principal contention of defendant's counsel that the wording of the affirmative liability set up by the Tort Claims Act is not broad enough to include the interest of a subrogee. Several recently decided District Court cases are cited in support of this contention—Rusconi v. United States, D.C.Cal., 74 F.Supp. 669; Old Colony Ins. Co. v. United States, D.C., Ohio, 74 F.Supp. 723; Nat. Am. Fire Ins. Co. v. United States, D.C.Cal.S.D., Civil No. 872;[1] Bewick v. United States, D.C.N.D.Tex., 74 F.Supp. 730; Mitchell v. United States, D.C.W.D.Wash., Civil No. 1809.[1]

■ On examination I find that these cases were apparently all without opinions except for brief recitals in orders of dismissal to the effect that the claims of subrogees as such are not sustainable because only derivative. See also Aetna Casualty Co. v. United States, D.C.N.Y., 76 F.Supp. 333, to the same effect. In some of these cases the suits were brought in the name of the subrogated insurer, and in others petitions for intervention were filed on behalf of subrogees. In the intervention cases so far as I have noted, it does not affirmatively appear that the plaintiff in the case was joining in the request for intervention nor that the petition for intervention was only "for the use of" the proposed intervenor. These cases are therefore not clearly in point in the instant case. We may assume (without the necessity of deciding in this case) that derivative claims as such are not authorized by the Act; that is to say, the proper plaintiff in suits under the Act is the person who has been damaged by the alleged tort of the Government's agent, and therefore the suit can properly be filed only by that person. When the suit is so brought by the injured party there is, I find, nothing in the Act to preclude joining as an equitable plaintiff a party who as subrogee is entitled to some part or the whole of the proceeds of recovery. The Government is in no way prejudiced by a suit in that form because it has all of the defenses of set-off, counter claim and otherwise that are available to it as against the legal plaintiff and it is immaterial to the Government what the wrongfully injured plaintiff does with the money recovered by him in the suit. The effect of the entry of "to the use of" in the title of the case merely constituted notice that the plaintiff will hold the recovery in whole or in part in trust for the equitable plaintiff so named and possibly also subjects the equitable plaintiff to liability for costs of the case in the event of no recovery by the legal plaintiff.

The only reported opinion that I have found dealing with a case much like the instant one is an opinion by District Judge Dooley in Hill v. United States, D.C.N.D. Tex., 74 F.Supp. 129 in which there is a full and well reasoned discussion of the subject matter and with which I find myself in agreement. A motion to dismiss the complaint was there overruled.

■■ The affirmative language of the Act, 28 U.S.C.A. § 931, is that the Federal District Courts shall have exclusive jurisdiction to render judgment—"* * * on any claim against the United States, for money only, accruing on and after January 1, 1945, on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrong-

---

[1] No opinion for publication.

ful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury, or death in accordance with the law of the place where the act or omission occurred. Subject to the provisions of this title, the United States shall be liable in respect of such claims, to the same claimants, in the same manner, and to the same extent, as a private individual under like circumstances," (with exceptions not material here). This language certainly clearly does not literally exclude an otherwise permissible legal plaintiff from titling his case to the use of an equitable plaintiff as subrogee; and, while of course the Statute should not be expanded by implication to extend the waiver of sovereign immunity by the Government, there is nothing in the subject matter of the Act to require reading into the language an exclusion of the purely equitable and beneficial interest of the subrogee in the manner adopted in this case. Nor have I been referred to any legislative history of the Act which tends to support the defendant's contention as to construction of the language used. It is said that H. R. 5065 of the 72nd Congress, First Session, was a bill somewhat similar to the Act passed by the 79th Congress, and that while it was pending counsel for the Comptroller General expressed opposition to the right of insurers to sue by way of subrogation, because the insurance companies receive premiums for the risks assumed (see hearings on H. R. 5065, House Claims Committee, Feb. 15, 1932, Page 24). The precise text of that proposed bill is not conveniently available to me nor the full testimony before the Committee, but the stated reason for the opposition does not seem relevant or persuasive. It is not apparent why the prudent foresight of a property owner in protecting his property by insurance should result in a benefit to the Government or a detriment to the property owner or his insurance carrier. In this respect the carriage of insurance would seem to be, so far as the Government is concerned, merely a transaction between the other par-

ties in which the Government was no wise interested or from which it could be in any way adversely affected. It was, therefore, *res inter alios acta.*

On the contrary, by analogy, counsel for the plaintiffs makes the more persuasive point that under certain specific former statutes in which Congress has permitted recovery by claimants the Supreme Court has allowed the benefit of such recovery to a subrogee, and the Assignment of Claims Statute above referred to was not applicable. United States v. American Tobacco Co., supra. And see also 36 Opinions of Attorneys General 553 (1932) interpreting the Act of December 28, 1922, 42 Stat. 1066, Title 31, U.S.C.A. § 215, and holding that the benefits of the Act inured to a subrogee.

Even more persuasive would seem to be the regulations which have been promulgated by the War Department for its guidance in the administrative settlement of claims under $1,000.00 authorized by the Federal Tort Claims Act, 28 U.S.C.A. § 921. These regulations, see U. S. Code Congressional Service 1947, page 2106 et seq., provide in substance that an otherwise valid claim will not be rejected merely because the claimant has been paid in whole or in part by an insurer; and that where a claim is submitted by or in the name of a subrogated insurer nevertheless the amount of the claim will be determined irrespective of the insurance and payments will be authorized to be made to the insured in amounts properly determined under the local law. And specifically it is provided that—

"Claims by subrogees will not be recognized *except as an element of the subrogors claim.*" (Italics supplied)

From this regulation it appears that had this claim been presented administratively it would have been paid in full.

█ It appears from the affirmative language of the Act above quoted that the test of liability of the Government is that afforded by the local law applicable to similar claims against private persons and the- "* * * United States shall be liable in respect of such claims, to the same claim-

178

ants, in the same manner, and to the same extent, as a private individual under like circumstances." Judged by this test it is clear enough under the decisions of the Maryland Court of Appeals that the Defendant as a private person would have been liable for the whole property damage sustained by the legal plaintiff in this case, and that to the extent of its interest the equitable plaintiff as subrogee would have been entitled to share the proceeds of recovery. The doctrine of subrogation in favor of an insurer in like cases has been frequently recognized and stated in the Maryland cases; and it has been common practice in this State to permit and sustain suits in the name of a legal plaintiff for the use and benefit of a subrogated insurer.

In general the substantive law and the particular procedure in such cases permits a subrogated insurer to sue in its own name where it has paid the whole loss sustained by the insured; but where the insurer has paid less than the whole loss the suit must be brought in the name of the person who has sustained the damage but with the notation that suit is also for the use and benefit of the insurer. United States v. American Tobacco Co., 166 U.S. 468, 474, 17 S.Ct. 619, 41 L.Ed. 1081; St. Louis I. M. & S. R. Co. v. Commercial Ins. Co., 139 U.S. 223, 235, 11 S.Ct. 554, 35 L.Ed. 154; Hall & Long v. Nashville & C. R. Co., 13 Wall. 367-371, 20 L.Ed. 594; Norwich Union Fire Ins. Co. v. Standard Oil Co., 8 Cir., 59 F. 984, 987; Baltimore American Underwriters of Baltimore American Ins. Co. v. Beckley, 173 Md. 202, 204, 195 A. 550; Packham v. German Fire Ins. Co. of Baltimore, 91 Md. 515, 523, 46 A. 1066, 50 L.R.A. 828, 80 Am.St.Rep. 461; Frontier Mortgage Corp. v. Heft, 146 Md. 1, 13, 125 A. 772; Aetna Life Ins. Co. v. Moses, 287 U.S. 530, 542, 53 S.Ct. 231, 77 L.Ed. 477, 88 A.L.R. 647; Vol. 3 Md. Law Rev. page 201, 213.

For these reasons I conclude the plaintiffs are entitled to a judgment against the defendant in the amount of $780.00; the Clerk is instructed to so enter the judgment with costs.