327 So.2d 571 (1976)
Denis A. DRENNING
v.
KUEBEL, INC., In Liquidation, et al.
No. 7214.
Court of Appeal of Louisiana, Fourth Circuit.
February 10, 1976.
Rehearing Denied March 16, 1976.
Writ Granted May 11, 1976.
*572 Tucker, Schonekas & Garrison, Gibson Tucker, Jr., and Charles A. O'Niell, Jr., New Orleans, for plaintiff-appellant.
Montgomery, Barnett, Brown & Read, Patrick J. Browne, New Orleans, for Kuebel, Inc., in Liquidation, The Kuebel Co., Robert G. Kuebel, Kenneth A. Kuebel and Conrad M. Kuebel, defendants-appellees.
Stone, Pigman, Walther, Wittmann & Hutchinson, Phillip A. Wittmann, New Orleans, for Mrs. Jo Ann Kuebel Williams, defendant-appellee.
Before SAMUEL, STOULIG and BOUTALL, JJ.
STOULIG, Judge.
Plaintiff, Denis A. Drenning, a 25% minority stockholder in Kuebel, Inc., filed this suit to nullify a sale of the corporation's primary asset from Omer Kuebel, Jr., as liquidator, to The Kuebel Company, a partnership composed of Robert G. Kuebel, Kenneth A. Kuebel and Conrad M. Kuebel, who collectively held the other 75% interest in the liquidating corporation. Plaintiff's suit to be recognized as owner of an undivided 1/8 (the other 1/8 was owned in indivision by his former wife) interest in the realty and to obtain an accounting of the liquidation was dismissed. Plaintiff has appealed.
Kuebel, Inc., was incorporated in the mid-1960s and its stock was held in equal proportions by defendants, Robert, Kenneth and Conrad Kuebel, and plaintiff, then married to Jo Ann Kuebel, defendants' sister. The corporation acquired immovable property in New Orleans East and constructed a building for the use of Deluxe Check Printers, Inc., at a cost of $200,000, which it borrowed from the Hibernia National Bank. To secure the indebtedness, the corporation signed and all individual stockholders endorsed a $200,000 promissory note, payable over a 10-year period. The mortgagor-lessor pledged and/or assigned the monthly rental of $2,509 received from Deluxe under a 10-year lease, which was sufficient to amortize the obligation and render it self-liquidated, subject to the right in favor of the lessee to cancel after seven years' occupancy.
The leasing agreement went into effect on April 1, 1968 and later that year plaintiff and his wife encountered marital problems which were resolved with a judgment of separation dated December 11, 1968 in a suit initiated by Jo Ann Kuebel Drenning and by a judgment of divorce dated December 15, 1970.
*573 Once plaintiff's marriage was dissolved, defendants tried to buy out the Drenning interest in the corporation and in a separate tract of land they owned individually and in indivision for a nominal price. When plaintiff rejected this offer, the majority stockholders devised a plan to liquidate Kuebel, Inc., for the stated purpose of getting rid of Drenning. On July 6, 1971, Robert G. Kuebel, president of Kuebel, Inc., and Conrad M. Kuebel, secretary, called a meeting for July 19, 1971 to discuss the liquidation. Although an attempt was made to notify Drenning, he did not attend. Parenthetically, it is doubtful whether his 25% voting interest would have changed anything. The Kuebel brothers decided to liquidate and appointed their personal attorney and cousin, Omer F. Kuebel, Jr., liquidator for the corporation.
To avoid double taxation to the corporation and on the individual distribution to each shareholder, the liquidator was required to complete the liquidation and distribute the assets within one year from the time the resolution to dissolve was adopted under 26 U.S.C. § 337. Between July 19, 1971 and July 15, 1972, Omer Kuebel, Jr., as liquidator, did nothing to further the liquidation on his own initiative. He testified he had several casual conversations with either Drenning or Drenning's attorney, the gist of which was either or both would do something about an appraisal.
On July 15, 1972, realizing the deadline for completion was fast approaching, Omer Kuebel, Jr., met with his three shareholder cousins and agreed to sell the principal asset (the realty) to The Kuebel Company, a partnership owned equally by the three Kuebel brothers. To arrive at a fair sale price, the liquidator testified he requested his licensed realtor cousin Kenneth Kuebel to make this determination. This realtor applied one hour of his "expertise" to this project and arrived at a gross valuation of $238,400.[1] From this price the realtor deducted $11,500 (standard broker's commission of 6% on the first $100,000 and 4% on the balance) which left $226,900. The liquidator rounded this figure off at $227,000.
The Kuebel partnership took title July 18, 1972, by paying the liquidator $95,512.47 cash and assuming the mortgage balance of $131,487.53. The first knowledge Drenning received of the sale came in the form of a certified check for $20,390.61, representing his interest in the distribution from the sale of corporate assets after his debt to the corporation was deducted ($24,436.65 minus $4,046.04). We note Omer Kuebel, Jr., in liquidating Drenning's interest in Kuebel, Inc., divested him of his interest in the corporate assets but failed to relieve him of the liability he had incurred as a shareholder. Drenning remained a personal endorser on the mortgage note held by the bank and assumed by The Kuebel Company partnership.[2] Drenning refused to accept the payment tendered to liquidate his interest in Kuebel, Inc.
The record establishes beyond a doubt that the liquidator sold the property for $28,000 less than its market value. This observation is based on the testimony of defendants' own expert realtor who placed the market value at $255,000. Defendants did not predicate their contention that a reasonable price was paid on fair market value. Rather, they used the premise that a quick sale condition prevailed and instructed their expert to project a reasonable price for the realty, assuming it must be sold within 10 days. The appraiser *574 then adjusted the price from $255,000 to $231,500. Without commenting on the relative merits of the expert testimony tendered on value, we accept the figure of defendants' realtor because they are bound by his testimony. This establishes the sale by the liquidator to the Kuebel partnership was $28,000 below market value.
The premise that the liquidator was forced into a distress sale by the inaction of plaintiff and his attorney is untenable. It was not the duty of the minority stockholder to conclude the affairs of the corporation in liquidation. Instead, the liquidator, who was paid for his services, was obligated to sell the assets at the best price available.[3] Had the liquidator not permitted 11 months and 27 days to elapse before attempting any positive action toward disposal of the realty, either by public or by private sale, for its fair market value, he would not have been confronted with a distress sale situation. The crisis, if any, was of the liquidator's making, not the minority stockholder's.
L.R.S. 12:145 charges the liquidator with this responsibility:
"G. In the performance of his duties, each liquidator shall be bound to exercise that care and prudence in the listing, custody, possession, control and disposition of the property and moneys of the corporation coming into his hands, and in the proper accounting therefor, and distribution thereof, as by law is imposed upon fiduciaries."
In Noe v. Roussel,[4] the Supreme Court held there was a fiduciary relationship between the liquidator and shareholders of a corporation. It reasoned that when a corporation was voluntarily or involuntarily placed in liquidation the duties and powers of the former officers and board of directors devolved upon the liquidator and therefore he was obligated to conduct himself in the same manner as are the officers and directors by L.R.S. 12:91. It states:
"Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its shareholders, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions. Nothing herein contained shall derogate from any indemnification authorized by R.S. 12:83."
It is plaintiff's position the liquidator is the alter ego of the majority stockholders because he is their cousin as well as their personal attorney. As their attorney, of course, he is their agent and although he testified he acted for all the shareholders in the liquidation and did not favor his clients, we do not think anyone can serve "two masters" with equal impartiality and objectivity. We conclude that the appointment of Omer Kuebel, Jr., as liquidator is tantamount to having all the majority stockholders in this position of trust. We do not mean to imply the appointment was illegal, but we do think all transactions for the corporation in liquidation as they affected the minority stockholder Drenning, against whom the three Kuebels were allied, should be closely scrutinized. When a transaction between the liquidator or his principals with the corporation is questioned, the liquidator has the burden of proving that the elements of good faith and fair value were observed in its confection. Noe v. Roussel, 310 So.2d 806 (La.1975).
In this case the defendant liquidator is obligated to establish by a preponderance of the evidence the sale of the realty was for a fair and reasonable price. His *575 own expert appraiser established the contrary.
Noe stated as a general rule the successful shareholder has the option of having a questionable sale set aside or claiming damages. However, in Noe the shareholder was not permitted to have the sale annulled because it had been transferred to a third party. Acknowledging the sale was highly questionable, the Supreme Court nonetheless applied the rule of McDuffie v. Walker[5] because no lis pendens was outstanding when the property was conveyed. Therefore, damages were awarded.
In the instant case the partnership has title and we have no question of a good faith third-party acquisition and/or a reliance on the McDuffie rule of public registry. Accordingly, with respect to the interest of plaintiff, the sale is cancelled and nullified and he is hereby recognized as owner of an undivided 1/8 interest. The 1/8 interest owned by his divorced wife (Jo Ann Kuebel Drenning Williams) is also returned to her by this decree. A nominal plaintiff because of her ownership, her attorney requested this court to make whatever disposition of her interest it deemed proper. Mrs. Williams took no active part in this litigation against her brothers.
In addition, there were other small assets the liquidator sold on a quick sale basis and there were certain expenses incurred in the liquidation. Plaintiff Drenning and his former wife are entitled to an accounting.
For the reasons assigned, the judgment of the trial court is reversed and it is now ordered there be judgment in favor of Denis A. Drenning and Jo Ann Kuebel Drenning Williams ordering Omer Kuebel, Jr., to render an accounting to them covering the liquidation of Kuebel, Inc.
It is further ordered, adjudged and decreed that the sale of the undivided 1/8 interest owned by Denis A. Drenning and the undivided 1/8 interest owned by Jo Ann Kuebel Drenning Williams be annulled and set aside and cancelled from the conveyance records of Orleans Parish in book 709, folio 295 and from the mortgage records of Orleans Parish in MOB 2215, folio 271 and Denis A. Drenning and Jo Ann Kuebel Drenning Williams are hereby recognized as owners of an undivided 1/8 interest each in and to the following described property:
"ONE CERTAIN PORTION OF GROUND, TOGETHER with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the State of Louisiana, Parish of Orleans, in the Third Municipal District of the City of New Orleans, in that portion thereof known as the New Orleans East Tract (formerly known as Faubourg deMontluzin) and in SQUARE D of the NEW ORLEANS EAST INDUSTRIAL CENTER SUDIVISION, as said Square D is shown and designated on plan of subdivision made by F. C. Gandolfo, Jr., dated March 2, 1961, as revised under date of August 2, 1961, and bearing the final approval of the City Planning Commission thereof dated September 6, 1961, and which said plan is registered in COB 638, folio 686 of the records of the Register of Conveyances for the Parish of Orleans and Designated as LOT 8B on a plan of resubdivision by the office of Gandolfo, Kuhn & Associates, dated April 25, 1967, comprising a portion of former Lot 8, Square D, and more particularly described as follows in accord with said plan:
"Lot 8B commences at the intersection of a line 1 foot west of and parallel to the East line of Square D and the North line of Old Gentilly (Gentilly Road) Highway; thence along a line 1 foot West of and parallel to the East line of Square D, N5°42'27"W a distance of *576 1646.83 feet to the Southeast corner of Lot 8B and the point of beginning; thence along the South Line of Lot 8B S 84° 17'33" W a distance of 568 feet to the East line of Michoud Boulevard; thence along said East line N °42'27"W a distance of 105 feet to the South line of Lot 8A; thence along said South line N84°17'33" E a distance of 201 feet to the East line of Lot 8A; thence along said East line N5°42'27" W a distance of 150 feet to the North line of Lot 8B; thence along said North line N 84°17'33"E a distance of 367 feet to the East line of Lot 8B; thence along the East line of Lot 8B which is 1 foot West of and parallel to the East line of Square D, S 5°42'27"E a distance of 255 feet to the Southeast corner of Lot 8B and the point of beginning. Containing 114,690 square feet."
It is further ordered that plaintiffs, Denis A. Drenning and Jo Ann Kuebel Drenning Williams, return to the liquidator, Omer Kuebel, Jr., his successor, or assign any consideration tendered and which plaintiffs may presently possess resulting from the liquidation of Kuebel, Inc.
Defendants are to pay all costs.
Reversed and rendered.
NOTES
[1] Although Kenneth Kuebel testified it was unethical for an appraiser to set the price on property he himself was acquiring, he found no conflict of ethics in appraising the realty he was buying as a partner from a liquidating corporation in which he held a 25% interest.
[2] While this case was pending before us, a release was executed by the bank in Drenning's favor.
[3] Todd Shipyards Corporation v. Lomm, 190 So.2d 125 (La.App.4th Cir. 1966); Brown & Son v. Wholesalers, Inc., in Liquidation, 52 So.2d 321 (La.App. 1st Cir. 1951).
[4] 310 So.2d 806 (La.1975).
[5] 125 La. 152, 51 So. 100 (1909).