339 So.2d 752 (1976)
Dennis A. DRENNING
v.
KUEBEL, INC., in liquidation, et al.
No. 57891.
Supreme Court of Louisiana.
November 8, 1976.
Rehearing Denied December 10, 1976.
Patrick J. Browne, Montgomery, Barnett, Brown & Read, Phillip A. Wittmann, New Orleans, for defendants-applicants.
Gibson Tucker, Jr., Tucker, Schonekas & Garrison, Charles A. O'Niell, Jr., New Orleans, for plaintiff-respondent.
CALOGERO, Justice.
Dennis A. Drenning, a stockholder of Kuebel, Inc., a Louisiana corporation, brought this suit against Kuebel, Inc., In *753 Liquidation, Robert C. Kuebel, Kenneth A. Kuebel, Conrad M. Kuebel and The Kuebel Company, a partnership consisting of the three aforementioned Kuebel brothers, to set aside a sale of corporation property by the liquidator to the partnership, dated July 18, 1972.[1] His claims of illegality include, principally, a charge of constructive fraud and collusion on the part of the three afore-mentioned Kuebels and their cousin-attorney, Omer F. Kuebel, Jr., liquidator of Kuebel, Inc., In Liquidation. The facts preceding and surrounding the controverted sale are adequately set forth in the Court of Appeal opinion at 327 So.2d 571 (La.App. 4th Cir. 1976) and will not be repeated herein except insofar as considered pertinent. It will suffice for the present to state that the liquidator's sale of the corporation's principal asset, a leased commercial building in New Orleans East, was made to a partnership consisting of the three Kuebel brothers for a price of $227,000 ($95,512.47 cash with assumption of a mortgage balance) based upon an appraisal by one of the purchasing partners, a licensed realtor.
The trial judge, after hearing all of the witnesses, concluded that plaintiff had not been dealt with unfairly nor his minority stockholder rights violated, and that the liquidation of the corporation had been done properly and in accordance with law. The court specifically found that much of plaintiff's difficulties stemmed from his own wilful refusal to cooperate in the liquidation of the corporation, and the court approved of the liquidator's actions. Accordingly the trial judge dismissed plaintiff's lawsuit at his costs.
The Court of Appeal reversed. Because of what it construed to be an apparent conflict of interest on the part of the liquidator (he was attorney for the three Kuebels, adversary counsel as to Drenning with respect to settlement of jointly-owned property and corporate interests as well as liquidator of the corporation with fiduciary responsibility to all shareholders), the Court of Appeal determined that it should closely scrutinize the transaction. Finding that a liquidator is obligated to sell corporation assets at the best price available, and that Omer F. Kuebel, Jr., as liquidator, had sold this property to the three Kuebels for at least $28,000 less than its market value, (a figure based upon the post-sale trial appraisal of their own expert), the court nullified the sale from the liquidator to the Kuebel partnership.[2] It declared that Dennis A. Drenning and Jo Ann Kuebel Drenning Williams were to be recognized as owners of an undivided one-eighth interest each in and to the property, ordered Drenning and his former wife to return to the liquidator any consideration tendered which they might possess resulting from the liquidation of Kuebel, Inc., and ordered the liquidator to render an accounting to them covering the liquidation of Kuebel, Inc.
Defendant's application for writ of certiorari was granted by this Court because of our concern about two aspects of the opinion below. First, we felt that it seemed legally inappropriate, upon voiding the sale of property from the liquidator to the Kuebel partnership, to declare that Drenning and his former wife should be owners in indivision of respective one-eighth interests.
*754 And, second we were concerned with the finding of the Court of Appeal that the sale from a liquidator should be nullified because, among other reasons, he did not sell the corporation assets at the best price available.
With respect to the latter consideration, it is something of an overstatement on our part to imply that the Court of Appeal nullified the liquidator's sale simply because he sold the property for less than its market value. The Court of Appeal was probably equally impressed that the liquidator by failing to get an independent appraisal did not perform his duties as a fiduciary should, that is, with concern for the best interest of all of his shareholders. In any event, we find it unnecessary to determine whether the trial court or the Court of Appeal was correct in its assessments of the performance of the liquidator, and in its application of governing legal principles.
We believe that nullification of the sale ordered by the Court of Appeal was correct, not because of any proven fraud or collusion, not because of any clear showing that the liquidator breached his fiduciary duties, and not because the price received for the property was some $15,800, or $28,000 (or more) less than its fair market value. We pretermit resolving these legal and factual issues, and turn to the matter which we believe dictates the result in this case: the manner in which the sale was consummated.
In July 1972 there was an outstanding mortgage on the property in question securing payment of a $200,000 promissory note executed on April 5, 1968. The promissory note had been executed by the corporation and bore the personal endorsements of the four corporate shareholders including plaintiff Dennis Drenning. In July 1972 the outstanding balance on that promissory note and mortgage was $131,487.53. The purchase price of $227,000 was made up of $95,512.47 in cash and assumption of that outstanding balance on the promissory note. The Kuebel partnership paid the purchase price by assuming the $131,487.53 mortgage balance and by paying $95,512.47 which they were able to cover by depositing to the partnership checking account (which had only a small balance), in addition to $22,000 of borrowed capital, three checks each in the sum of $24,436.65, checks which the three Kuebels had received from the liquidator apparently coincident with execution of the sale as their respective liquidating dividends.
While their means of raising the $95,512.47 cash does indicate that the sale could not have been consummated without the active cooperation of the liquidator, we do not find in this fact alone a collusive impropriety which would require nullification of the sale. There is nonetheless a significant reason why we believe the sale by the liquidator was illegal and must be nullified.
The purchasers' raising of the money with which to consummate the sale was accomplished by virtue of and coincident with a statutory violation by the liquidator which left the corporate shareholders, most particularly Drenning, liable as an endorser on the original April 5, 1968 promissory note.
La.R.S. 12:145(F) prohibits a corporation's paying out liquidating dividends to stockholders while corporation debts are outstanding. At the time of the sale, that statute provided in pertinent part[3] that:
"Any net assets remaining, after paying all debts and liabilities of the corporation, *755 including all costs and expenses of the liquidation, shall be paid by the liquidator to the shareholders according to their respective rights and preferences." (emphasis added)
Under the statute, a liquidator is required to assemble all assets, to pay all debts as far as the assets will permit, to terminate all liabilities, and only then to pay the surplus, if any, to the stockholders. McCoy v. State Line Oil & Gas Co., 180 La. 579,157 So. 116 (1934); In re Dutch O'Neal Motors of Louisiana, Inc., 148 So.2d 468 (La.App.4th Cir. 1963); Brown & Son v. Wholesalers, Inc., In Liquidation, 52 So.2d 321 (La.App.1st Cir. 1951). The consequence of the transaction in the instant case was that final liquidating dividends were distributed to the stock-holders, dividends which were derived from the proceeds from sale of the corporation's sole significant asset, and yet the corporation remained liable on the 1968 promissory note as did the endorsers thereon, including Drenning.[4] Whether this arrangement was collusive or fraudulent, or neither of these, it was at the very least illegally confected.
To validate the sale under these circumstances would be to sanction conduct of the liquidator and corporate shareholders in direct contravention of La.R.S. 12:145(F). We are compelled, therefore, to uphold the statute and hold that the sale of the property in question by Omer F. Kuebel, Jr. to the Kuebel Company was null and void.
We do, however, find merit in defendant's assignment of error by which the Kuebels complain that the Court of Appeal should not have recognized Drenning and his ex-wife as having an undivided one-eighth interest each in the real estate in question. Neither Drenning nor his former wife ever had an undivided interest in the real estate in question. The owner, and vendor, was the corporate entity, Kuebel, Inc., In Liquidation. Hence, nullification of the sale of the property in question, absent a stipulation by the parties to the contrary, must result in revesting of the property in Kuebel, Inc., In Liquidation. The consideration tendered to Drenning and his former wife must, of course, be returned to the liquidator.
For the foregoing reasons the judgment of the Court of Appeal is affirmed insofar as it orders an appropriate and timely rendering of an account to plaintiff by the liquidator of Kuebel, Inc. and insofar as it orders plaintiff and his former wife to return to the liquidator, Omer F. Kuebel, Jr., any consideration tendered which has not been returned, resulting from the liquidation of Kuebel, Inc. The judgment, however, is reversed insofar as it recognizes plaintiff and his former wife as owners of an undivided one-eighth interest each in the subject property. It is further ordered that the sale from Kuebel, Inc., In Liquidation to The Kuebel Company of the property in New Orleans East Industrial Center Subdivision more fully described in the Court of Appeal opinion, be and is hereby declared null and void and of no effect.
AFFIRMED IN PART, REVERSED IN PART.
NOTES
[1] Mrs. Jo Ann Kuebel Drenning Williams, who is Drenning's former wife and the sister of the three Kuebel brothers, was made an additional nominal party defendant. She submitted herself to the jurisdiction of the court for a determination of her rights as owner of a one-eighth interest in Kuebel, Inc. which she acquired through her community interest in Drenning's 25% stock interest in the corporation. The three Kuebel brothers owned the remaining 75% stock interest, 25% each.
[2] Kenneth Kuebel's appraisal was $238,400, less an $11,400 realtor's commission which the corporation would normally be expected to bear, or which, he argued alternatively, he was due. Plaintiff's two appraisers, who were possibly not quite as qualified as defendants', appraised the property at figures in the vicinity of $280,000. Defendants' appraiser, Max Derbes, Jr., gave a July 1972 appraisal of $255,000 ($242,700 with discount for realty commission). Defendants contend that the Court of Appeal's finding of a $28,000 difference between sale price and market value was erroneous, that the appropriate difference between the Drenning and Derbes appraisals was only $15,800. Their point in this regard may be well taken.
[3] Since that time the provision has been amended to provide as follows:

"Any net assets remaining after paying or adequately providing for the payment of all debts and liabilities of the corporation, including all costs and expenses of the liquidation any and all contingent liabilities of which the liquidator has knowledge, shall be paid by the liquidator to the shareholders according to their respective rights and preferences. The share of any shareholder who cannot be found shall be delivered to the collector of revenue in accordance with the provisions of R.S. 9:151.
In the event that there are contingent liabilities for which provision has been made as above, the liquidator shall not be dismissed until the contingent liabilities and debts have been paid or settled in full." Amended by Acts 1974, No. 610, § 1.
[4] This might have been irrelevant to the Kuebels who, as partners in the purchasing entity, specifically assumed payment of the note on which as corporate stockholders they had earlier been personal endorsers. The same cannot be said for Drenning who was not one of the purchasing partners, yet remained secondarily liable on the outstanding note of a corporation whose affairs had been concluded and whose assets had been disposed of.