DUFRESNE, Judge.
Defendant, Julius H. Verheugen d/b/a Super Stop Food Store, appeals the judgment of the trial court awarding $9,968.23 to the plaintiff, First National Bank of Commerce (FNBC), although the trial court granted attorney’s fees, FNBC, by agreement with Super Stop, has waived any claim for attorney’s fees in this action.
FNBC filed suit against Super Stop to collect an account receivable of Louisiana Grocers’ Co-Operative, Inc. which had been pledged to FNBC to secure the indebtedness of Louisiana Grocers to FNBC. Super *454 Stop asserted an affirmative defense of compensation or set-off. The trial court ruled in favor of FNBC and against Super Stop, and from this judgment Super Stop has devolutively appealed and contends that the trial court’s decision was manifestly erroneous and contrary to the law and evidence.
Louisiana Grocers (now in bankruptcy) was a co-operative of local grocery stores organized as a Louisiana corporation. The purpose of its existence was to purchase food and household items in volume for resale to its various members. It had two primary sources of financing, namely, through its member stores and FNBC. The indebtedness of Louisiana Grocers to FNBC was in the principal amount in excess of $3 million as of August 23, 1985. This indebtedness was secured by an assignment of accounts receivable and a mortgage affecting their inventory.
On July 31, 1985, Super Stop received notification from FNBC of the assignment of the accounts receivable.
Almost a month later, in August 1985, Louisiana Grocers filed under Chapter 11 of the United States Bankruptcy Code. On September 18, 1985, the Bankruptcy Court authorized FNBC to collect the accounts receivable due Louisiana Grocers.
By stipulation Super Stop agreed that it owed $9,968.23 to Louisiana Grocers, however they raise the issue of compensation or set-off based upon the following:
1.) The amount of funds which had been deposited by Super Stop in its “Member’s Buying Deposit Account” with Louisiana Grocers. (Deposit Account), totalling $1,045.86;
2.) The temporary handling fee which had been assessed Super Stop (Handling Fee), totalling $18,333.35; and
3.) The values attributable to Class A & B stock owned by Super Stop, totalling $32,390.61.
All values were calculated as of the date Super Stop received notice from FNBC. The facts which were germane to the nature of the Deposit Account, Handling Fee and Class A & B stock as they were described in the By-Laws of Louisiana Grocers and the Report on Examination year ending January 28, 1983 and January 27, 1984 were stipulated between the parties. The parties placed into evidence these stipulations, as well as others, in lieu of presentation of live testimony.
The trial court considered the stipulation of facts and concluded as follows:
“The court is of the opinion that the deposit and temporary handling fee was an unliquidated interest not subject to set-off. As to the stock, the stock of Super Store [sic] constituted equity, any obligation of LGC to pay Super Stop would not have been due until liquidation and after all the creditors of LGC had been paid. Moreover, due to the insolvency of LGC, these values had been reduced to zero.
The code requirements for compensation do not exist in the instant case. Article 1893 of the Civil Code provides:
Compensation takes place by operation of the law when two persons owe to each other sums of money or quantities are liquidated and presently due.
Thus, at the time FNBC gave notice of the assignment to Super Stop, the rights of FNBC and Super Stop were established. Thereafter, Super Stop was a debtor of FNBC, and any obligation of LGC to Super Stop arising after that date was not available for compensation. The Deposit Account at the time of the notice was given did not constitute an equally liquidable debt of LGC, as Super Stop had not withdrawn from LGC.”
DEPOSIT ACCOUNT
The Deposit Account was established by the By-Laws of Louisiana Grocers. Each member was required to make deposits into the account to assist in the financing of inventory. The By-Laws also contained the requirements for withdrawals of funds from the Deposit Account, namely that excess funds could be withdrawn by written notice or total withdrawal was permitted only by former members of the Co-Operative by written request. All Deposit Accounts were classified as equity in the fi *455 nancial statements of Louisiana Grocers for the years 1983 and 1984.
We are convinced from the record and evidence before us that the Deposit Account clearly constituted equity and was not a liability of the corporation. Super Stop could only require payment of their Deposit Account upon withdrawal from the Co-Operative. Super Stop stipulated they had not withdrawn, thus this Deposit Account was an unliquidated interest and not subject to compensation or set-off.
CLASS A & B STOCK
It was stipulated that the stock owned by Super Stop had a value of $32,390.61. This represented Super Stop’s share of ownership of Louisiana Grocers and the trial court was correct in its ruling that due to the insolvency of LBC, these values had been reduced to zero.”
We agree with the trial court, that shareholders cannot receive any distribution from the assets of a corporation, as shareholder, (i.e., “equity”) until the creditors of the corporation have been paid in full LSA-R.S. 12:145(F); Drenning v. Kuebel, Inc., 339 So.2d 752 (La.1976).
Accordingly, the value of the stock owned by Super Stop is not available for any set-off.
HANDLING FEE
Members were taxed this temporary expense in January 1982 as a means of eliminating a debt of Louisiana Grocers because of tax credits the Co-Operative may lose. This handling fee was treated as income by Louisiana Grocers and the member stores could likewise deduct the fee on their own tax returns.
This fee also is not available for any set-off since it is not a debt of Louisiana Grocers.
CONCLUSION
The law in Louisiana is explicit as to the requirements for compensation. Article 1893 of the Civil Code provides:
“Compensation takes place by operation of the law when two persons owe to each other sums of money or quantities of fungible things identical in kind, and these sums or quantities are liquidated and presently due.
In such a case, compensation extinguishes both obligations to the extent of the lesser amount.
Delays of grace do not prevent compensation.”
Additionally, Article 1900 which deals with an assignment of an obligation provides in pertinent part:
“An obligor who has been given notice of an assignment to which he did not consent may not claim compensation against the assignee for an obligation of the assignor arising after that notice.”
The comments to Article 1900 also state:
“After notice has been given, the obligor knows that his debt is actually owed to the assignee and, therefore, compensation cannot take place between that debt and any which the original obligee might thereafter come to owe the obligor.”
Thus, at the time FNBC gave notice of the assignment to Super Stop, the rights of FNBC and Super Stop were established. Thereafter, Super Stop was a debtor of FNBC, and any obligation of Louisiana Grocers to Super Stop arising after that date was not available for compensation. We have consistently emphasized the necessity that debts be equally demandable for compensation to be available. Beninate v. Licata, 473 So.2d 194 (La.App. 5th Cir.1985).
“In order for compensation or set-off to be applicable, there must be the contemporaneous existence of distinct debts, each equally liquidated and demandable.”
The evidence clearly shows that at the time Super Stop received notice of the assignment by FNBC, it owed Louisiana Grocers $9,968.23. We agree with the trial court that the deposit account constituted an equity position (i.e., ownership) of Super Stop in Louisiana Grocers and was not on indebtedness of Louisiana Grocers which could be set-off against amounts due Louisiana Grocers.
*456 Super Stop had not withdrawn at the time of its receipt of notice of the assignment and therefore equally demandable debts did not exist between Louisiana Grocers and Super Stop.
Furthermore, the Class A & B stock did not represent debts of Louisiana Grocers. Similarly, the stock represented an ownership interest. Absent withdrawal from Louisiana Grocers Super Stop could receive the value relating to this interest only upon the dissolution and the payment in full of Louisiana Grocers’ creditors. Neither event occurred at the time Super Stop received notice from FNBC. Lastly, we have also concluded that the handling fee was also not an indebtedness of Louisiana Grocers.
The Civil Code requirements for Compensation (setoff) are absent from the facts in the record, and the trial court’s judgment in favor of FNBC is correct as a matter of Law.
FNBC has by agreement with Super Stop agreed to waive any claim for attorney fees in this proceeding. Accordingly, that portion of judgment will be reversed since it was not in compliance with LSA-R.S. 9:2781 anyway.
For the foregoing reasons, the judgment of the trial court in favor of FNBC and against Super Stop in the amount of $9,968.23, together with legal interest from date of judicial demand until paid, is affirmed, that part awarding attorney’s fees is reversed.
All costs of this appeal are to be paid by the appellant.
AFFIRMED IN PART, REVERSED IN PART.