**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**717.42 ACRES OF LAND, etc., et**
**al., Defendants–Appellees.**

No. 90–1736.

United States Court of Appeals,
Fifth Circuit.

March 12, 1992.

Janet K. Jones, Gary R. Allen, Gary D. Gray, Chief Appellate Sec., Tax Div., Dept. of Justice, Washington, D.C., for U.S.

Owen T. Palmer, Jr., Gulfport, Miss., Ky P. Ewing, Christopher Corson, Washington, D.C., for Petit Bois, Inc., Vinson & Elkins & Owen T. Palmer, Jr.

James L. Martin, Martin, Young & Wright, Jackson, Miss., for Martin.

John A. Barley, Tallahassee, Fla., for Coastal Land & Mineral Co., Ltd.

Before POLITZ, Chief Judge, HIGGINBOTHAM, Circuit Judge, and PRADO,* District Judge.

POLITZ, Chief Judge:

The United States appeals a judgment in the distribution phase of an eminent domain case. Finding no error, we affirm.

### Background

In June 1926 Petit Bois, Inc. (PBI), a Louisiana corporation, acquired certain acreage on Petit Bois Island, a barrier island off the Mississippi coast. In May 1954 PBI transferred to its shareholders as a dividend an undivided three-fourths interest in the mineral estate. Congress designated the island for inclusion in the Gulf Islands National Seashore in 1971. In December 1979 John R. Stocks, a Florida resident and real estate developer desiring to convert the Petit Bois Island acreage into a resort, purchased all PBI shares. PBI's surface interests on the island were transferred to other entities in January 1980, leaving PBI with only one asset, an undivided one-fourth mineral interest in the island property.

On May 16, 1980 the United States filed a Declaration of Taking for 717.42 acres of land on Petit Bois Island, including the acreage on which PBI held its mineral interest. As a result of the taking, PBI terminated its activity on the island and took steps to end its corporate existence. Invoking Louisiana law, the shareholders placed PBI in voluntary liquidation in February 1981 and designated Stocks as the corporate liquidator. In December 1981 PBI conveyed all right, title, and interest in and to PBI's mineral estate on Petit Bois Island to Coastal Land & Marine Company, Ltd., a Mississippi limited partnership wholly owned by Stocks. The conveyance to Coastal was made subject to a prior transfer of a mineral royalty interest to Stocks and another. PBI's corporate existence legally ceased when the Louisiana Secretary of State certified its dissolution in April 1982. In November 1984 and October 1985 the United States made multiple personal assessments of tax liabilities against Stocks. Federal tax liens were filed in various jurisdictions from June 1986 through December 1988. Stocks petitioned for bankruptcy in the Northern District of Florida in December 1988.

The United States originally valued the undivided one-fourth mineral interest at zero dollars, taking the position that the mineral interest required no payment. After a valuation trial on the mineral interest, the district court ordered the United States to deposit $2,798,557 ($1,071,534 plus interest) into the registry of the court. The district court then awarded $1,756,200 to Vinson & Elkins and Owen T. Palmer, Jr., as attorneys' fees and costs, on their "charging" or equitable liens against the $2.8 million fund which their efforts had created for their client PBI. The district court also ordered any residue of the fund be distributed to Coastal as assignee of PBI's assets, subject to final determination by the bankruptcy court presiding over Stocks' petition. The United States timely appealed.

---

* District Judge of the Western District of Texas, sitting by designation.

## Analysis
### Assignment of Claims Act

█ The United States first urges that the conveyance from PBI to Coastal of PBI's "claim to just compensation" is void for lack of conformance with the Assignment of Claims Act, 31 U.S.C. § 3727. No party disputes the existence of a claim or that the conveyance to Coastal does not conform to the requirements of the Claims Act. In its September 18, 1989 motion to substitute Coastal for PBI in the distribution phase, PBI admits that "[u]nder the doctrine of *cy pres* and its analogues, [the conveyance] deed to Coastal ... was sufficient to transfer [PBI's] just compensation claim...." Thus, it cannot reasonably be argued that neither the claim nor an interest in it was the object of the conveyance to Coastal. Nonetheless, in accord with the rule of *United States v. Dow*, 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958), the valuation phase of the eminent domain claim was litigated from its ·inception by PBI, the owner of the property at the time of the taking and the United States. The question of the validity of the conveyance *vis-a-vis* the Claims Act only arose in the context of the motion to substitute Coastal for PBI in the distribution phase.

Relying on *Martin v. National Surety Co.*, 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822 (1937), the district court held the Claims Act to be inapplicable to the distribution phase of an eminent domain proceeding. The *Martin* court held that once the fund was paid into the court's registry the impetus of the Claims Act to protect the government from "becoming embroiled in conflicting claims, with delay and embarrassment and the chance of multiple liability [as to that claim]" had been served. *Martin*, 300 U.S. at 594, 57 S.Ct. at 533. Furthermore, "[a] transfer of the fund after payment is perfected is of no concern to any one except the parties to the transaction, and this quite irrespective of the time of the assignment or the manner of its making." *Id.* at 595, 57 S.Ct. at 534.

Urging that *Martin* is inapposite, the United States contends that the Claims Act expressly voids the transfer and that the statute should be applied as written without any judicial gloss related to the fulfillment of the Claims Act's purpose. This argument gives little weight to the fact that it was the Supreme Court in *Martin* that placed the suggested "judicial gloss" on the Claims Act. As an inferior federal court we must be faithful to the teachings of *Martin*. We therefore uphold the district court's determination that on the facts of this case the Claims Act is inapplicable and affirm its order that Coastal be paid any residual amount of the fund, subject to a final determination by the bankruptcy court with jurisdiction over Stocks' proceeding.

The United States further argues, citing *United States v. Shannon*, 342 U.S. 288, 72 S.Ct. 281, 96 L.Ed. 321 (1952), that the Claims Act serves an additional purpose of preserving the government's setoff rights. In *Shannon* the Supreme Court in dicta cited a district court case which held that a limited additional purpose of the Claims Act was "to save to the United States 'defenses which it has to claim *by an assignor* by way of set-off ... which might not be applicable to an assignee'" *United States v. Shannon*, 342 U.S. at 291–92, 72 S.Ct. at 283–84 (citing *Grace v. United States*, 76 F.Supp. 174 (D.C.Md.1948)) (emphasis ours) (internal punctuation omitted). The *Shannon* court did not purport to reject or accept the *Grace* assertion. Rather, the decision in *Shannon* turned on the well-recognized purpose of the Claims Act that the government should not be exposed to an unauthorized assignee's assertion of claims which the assignor had forsworn. *United States v. Shannon*, 342 U.S. at 293, 72 S.Ct. at 284. The United States cites no controlling authority to support its "setoff rights preservation purpose" theory of the Claims Act. Even if we were inclined to recognize such a purpose, we are not persuaded that the instant case is the proper case for its application—the United States has proved neither a claim nor setoff rights against PBI, the *assignor*.

### Effect of PBI's Liquidation

The United States urges that the district court erred in rejecting its argument that

upon commencement of voluntary liquidation all of PBI's corporate assets devolved, by operation of law, upon its sole shareholder, Stocks. The parties tacitly assume that Louisiana law controls this issue. We review district court determinations of state law *de novo. Salve Regina College v. Russell,* — U.S. —, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

■ The United States' argument misperceives the distinction between liquidation and dissolution under Louisiana law and generally misperceives Louisiana law of corporations as it relates to corporations in liquidation, corporations in dissolution, and disposition of the assets of each. The corporate existence of PBI ceased on the date of its dissolution.[1] La.R.S. 12:148. The United States did not challenge the legality of PBI's liquidation and dissolution proceedings. *Levy v. Billeaud,* 443 So.2d 539 (La.1983). Nor did it assert that Stocks is the alter-ego of PBI. *Baker v. Raymond Int'l, Inc.,* 656 F.2d 173 (5th Cir.1981). Nor did it urge that the corporate veil of PBI be pierced in reverse to make the corporation liable for Stocks' personal tax debts. *Century Hotels v. United States,* 952 F.2d 107 (5th Cir.1992) (reverse-piercing not recognized under Louisiana law). Nor did the United States allege enterprise liability between PBI, Stocks, and Coastal. *Green v. Champion Ins. Co.,* 577 So.2d 249 (La.App.1991).

■ Under Louisiana law, upon the commencement of liquidation proceedings "all rights, powers and duties of the officers and board of directors, except as otherwise provided by law, shall be vested in the liquidator." La.R.S. 12:141(C); *Levy, supra.* Liquidation is a winding-down of the affairs of the corporation, a period of continued corporate existence under the control of the liquidator. *Noe v. Roussel,* 310 So.2d 806 (La.1975); *Mayfair Sales, Inc. v. Sams,* 339 So.2d 1277 (La.App.1976). The liquidator is vested, absent any other shareholder-imposed limitations, with full authority to: (1) sue for and recover, in the name of the corporation, the debts and property of the corporation, (2) sell and convey the property of the corporation, (3) retain counsel, and (4) to do any and all things which may be necessary, proper, or convenient for the purpose of liquidating the corporation. La.R.S. 12:145(C); *Drenning v. Kuebel, Inc.,* 339 So.2d 752 (La. 1976). Debts incurred in the exercise of these powers create corporate creditors. The liquidator owes a fiduciary duty to these creditors and they must be paid from corporate assets prior to and in preference of shareholders. La.R.S. 12:145(C)(7) & (F); La.R.S. 12:91; *Noe; Drenning; Edwins v. Lilly,* 422 So.2d 1217 (La.App. 1982).

Regarding the disposition of the eminent domain claim, Louisiana law mandates that:

Any net assets remaining after paying or adequately providing for the payment of all debts' and liabilities of the corporation, including all costs and expenses of the liquidation [of] any and all contingent liabilities of which the liquidator has knowledge, shall be paid by the liquidator to the shareholders according to their respective rights and preferences. La.R.S. 12:145(F).

and that:

Any movable or immovable property inadvertently or *otherwise omitted* from the liquidation shall vest in the liquidator, for the benefit of the persons entitled thereto, and to be distributed accordingly. La.R.S. 12:148(D) (emphasis ours).

The "benefit of persons entitled" language of section 148(D) must be construed in light of section 148(F) which relegates shareholders to net corporate assets, a residuary right subject to valid claims by corporate creditors. La.R.S. 12:145(F); *Noe v. Roussel,* 310 So.2d 806 (La.1975); *Alley v. Miramon,* 614 F.2d 1372 (5th Cir.1980).

■ The United States argues that because there were no PBI creditors when the liquidation commenced, the net corpo-

---

**1.** The district court incorrectly determined that PBI was dissolved on February 10, 1981. Although this is the import of a number of documents in the record, legal dissolution occurs when the Louisiana Secretary of State issues a certificate of dissolution. La.R.S. 12:148. The Louisiana Secretary of State issued a certificate of dissolution for PBI in April 1982.

rate assets vested immediately in Stocks upon dissolution. But for the fact that the liquidator had a statutory obligation to continue the eminent domain litigation even after PBI's dissolution, this argument might have merit. The termination of PBI's corporate existence did not affect any action or suit commenced therefore by, or commenced timely against, the corporation, including the eminent domain suit. La.R.S. 12:148(C). After the dissolution of the corporation, the liquidator has, by operation of law, the express power and obligation to take all action required to preserve the interest of the former corporation. La.R.S. 12:145(G); *Mayfair Sales, Inc.,* 339 So.2d at 1279. Pursuant to that fiduciary duty, the liquidator is required to pay the debts of the dissolved corporation, including attorneys' fees and costs which arise out of the exercise of his statutory duty to recover and liquidate the corporation's assets. The eminent domain litigation was of necessity "otherwise omitted" from the liquidation and dissolution of PBI because it persisted beyond the date of dissolution. La.R.S. 12:148(D). The liquidator therefore owed a fiduciary duty to the attorneys, who became creditors of PBI by virtue of having been hired to litigate the sole asset of PBI, the eminent domain claim. La.R.S. 12:148(D). Only after paying all debts owed by PBI, including that owed to the attorneys, could the liquidator distribute remaining net assets, if any. *Drenning; Noe; Edwins.* Therefore under Louisiana law, any rights Stocks may have had in the eminent domain proceedings award were merely contingent and subject to the priority claims of the attorneys as PBI creditors.

### Setoff Rights

The United States next maintains that a fund to which the attorneys' liens could attach could not come into existence because of the government's right of setoff, citing *United States v. Munsey Trust Co.,* 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022

(1947). The government further argues that our decisions in *United States v. Transocean Air Lines, Inc.,* 386 F.2d 79 (5th Cir.1967), and *United States v. Cohen,* 389 F.2d 689 (5th Cir.1967), control the decision in the instant case. We disagree with both assertions.

■ The district court held that the United States had no equitable right to setoff because there was no mutuality of debt.[2] The district court based its conclusion upon two factual findings: (1) the claim for compensation was owed to PBI by the United States and (2) the tax liabilities were owed by Stocks personally to the United States. Reviewing the district court's factual findings under the clearly erroneous standard, we find ample record support for these findings. Fed.R.Civ.P. 52(a). As we have previously noted, the United States made no allegations of alter-ego or enterprise liability or any other legally cognizable circumstances which would make PBI responsible for Stocks' personal tax obligations; nor did the district court make any such findings. Because Stocks was not a direct distributee of the fund, any right of setoff that the United States might have arising out of Stocks' personal tax debts is immaterial with regard to the distribution of this fund. *Munsey Trust Co.* is inapposite.

*Transocean* and *Cohen* stand for the general proposition that the government may not be compelled to pay a judgment against which it has a right of setoff in order to provide a fund to which an attorney's lien may attach. In that very statement lies the essential inapplicability of those cases to the instant situation. As we have determined previously the government has no right of setoff against the valuation judgment.

The United States next urges that if the fund came into existence then its right of setoff could not be extinguished by the deposit into the court's registry. Because of its decision that there was no right of

**2.** *See also:* 31 U.S.C. § 3728: Setoff against Judgment.

 (a) The Comptroller shall withhold paying that part of a judgment against the United

States ... that is equal to a debt the plaintiff owes to the Government.

setoff, the district court did not rule on this contention. The appellees argue on the authority of *National Refining Co. v. United States,* 160 F.2d 951 (8th Cir.1947), that payment of the valuation judgment into the registry of the court extinguished the United States' right of setoff. Concluding as did the district court that there was no right of setoff, we do not reach that issue.

*Attorneys' Equitable or Charging Liens*

 The district court held in the alternative that if the United States had equitable setoff rights then the attorneys held superior equitable or "charging" liens against the fund created by their efforts. Both Mississippi law, *Chattanooga Sewer Pipe Works v. Dumler,* 153 Miss. 276, 120 So. 450 (1929), and Florida law, as interpreted by this court, *Chancey v. Bauer,* 97 F.2d 293 (5th Cir.1938), give an attorney's charging lien first priority for payment from the fund created through the efforts of the attorney. Therefore, even if Stocks were a distributee of the fund, which we have determined that he was not, the distribution of the fund to the attorneys would prime any distribution to Stocks against which the United States might assert a right of setoff.

*Superpriority*

 The district court alternatively held that the attorneys had superpriority pursuant to 26 U.S.C. § 6323(b)(8). The United States does not dispute the application for section 6323(b)(8); rather, it seeks benefit of an exception contained within the same section:

> [E]xcept that [the superpriority provision] shall not apply to any judgment or amount in settlement of a claim or cause of action *against* the United States to the extent that the United States offsets such ... amount *against* any liability of *the tax payer* to the United States.

26 U.S.C. § 6323(b)(8) (emphasis ours). The district court rejected this argument finding that this action was not one

*against* the United States because the United States had instituted the action.[3] We need only to observe that Stocks, the debtor-taxpayer against whom the United States would offset, is not the holder of the claim or cause of action. The United States cites several district court cases interpreting the meaning and purpose of section 6323(b)(8). The United States fails to refute, however, the fact that Stocks is not the beneficiary of the fund against which it would offset. Without further exploration of the purpose or spirit of 26 U.S.C. § 6323(b)(8), we conclude that the exception contained in section 6323(b)(8) is inapplicable to the issue presented today.

The judgment of the district court is AFFIRMED.

---

3. *See also* 26 C.F.R. § 300–6323(b)–1(h)(2)(i) for administrative rules which also delimit the scope of the attorney's lien exception to cases other then those in which the claim or cause of action is *against* the United States.